## CHASE v. FILLEBROWN et al.

(Circuit Court, D. Massachusetts. August 22, 1893.)

No. 2,617.

1. PATENTS FOR INVENTIONS—PLEADINGS—ADMISSIONS IN ANSWER.
    Infringement of a patent is admitted by an answer stating that the goods sold by defendants were "fabric alleged by the complainant to be such as is described and claimed in said letters patent," further stating that the larger part sold was under a license, and denying that, as to the remainder, such sale was in violation of and an infringement upon any of complainant's rights.

2. SAME—PRACTICABILITY.
    After a license to sell a fabric made under letters patent No. 160,684, issued March 9, 1875, to Kent & Leeson, had expired, the licensees, who had previously acted as agents of the patentees, and were also dry-goods commission merchants, continued to sell alleged infringing fabrics. Held, in the absence of proof that, as claimed by them, the fabric could not

be made by the use of devices described by the patentee, the fact of the defendants' connection with the article in question, with the patent itself, was prima facie evidence that it could.

3. SAME.

A claim of an invention of a process of knitting, by which no portion of the plush thread appears on the knitted face, is not affected by the fact that the plush threads may appear through the knitted surface when the wales are distended.

4. SAME—ANTICIPATION.

Tilghman v. Proctor, 102 U. S. 707, 711, and Topliff v. Topliff, 12 Sup. Ct. Rep. 825, 145 U. S. 156, 161, applied.

5. SAME—FOREIGN PATENT.

A patent for a product with a clean knitted face, not penetrated by the threads of the other face, is not anticipated by foreign patents, describing, in a general way, products having their different faces of different materials.

6. SAME—FOREIGN PATENT.

The words "clean knitted face" mean a fabric not homogeneous, and not knitted solid or through and through, and the patent was not anticipated by the British patent of Keely & Wilkinson for a fabric formed by the plain loop-stitch knitting process from three or more yarns, two of silk or the like, and another or others of low grade; the high-grade yarns enveloping or covering the low-grade yarn or yarns, and appearing on both faces of the fabric.

In Equity. Bill by Richard F. M. Chase against Charles B. Fillebrown and others for infringement of letters patent No. 160,684, issued March 9, 1875, to Kent & Leeson, for an improvement in knit fabrics. Decree for complainant.

The patentees thus describe their invention:

"This invention relates to certain improvements in the manufacture of plush and knitted goods. It consists in the production of an improved fabric, having a clean knitted face on one of its sides, and a plush face upon the other, the several threads being arranged in such a manner that the thread which forms the plush shall not show upon the face side of the goods. By reason of this improvement the fabric is adapted to a great variety of uses, as the plush may be of wool, silk, cotton, or other material, while the face side of the fabric may be wholly of cotton, and it is thereby rendered peculiarly applicable for linings of rubber goods, as the wool or other material of which the plush is formed does not protrude on the face side of the fabric; and it is also well adapted for stockings, jackets, drawers, gloves, chest protectors, and for shoe and glove linings, as well as for a great variety of uses to which both knitted and plush goods are applied. We are aware that various kinds of plush goods with a knitted or a woven face have been made and used; but all knitted plush goods, so far as we are aware, which have heretofore been produced, have been open to the objection that portions of the plush thread passed through the fabric and showed upon the face side. By our improvement this objection is removed, and our improved fabric shows a clean knitted face on one side, and a plush face, of either similar or different material, on the other side; the plush threads being knitted in such a manner that **they pass only halfway** through the fabric."

John R. Bennett and William P. Preble, for complainant.

Charles H. Drew, for defendants.

PUTNAM, Circuit Judge. The respondents claim that, assuming the validity of the patent, there is not sufficient evidence of infringement. The only proof offered comes from the respondents and their agent; and, to be sure, it is very general and far from

specific. The answer, however, admits that a portion of the goods sold by respondents was "fabric alleged by the complainant to be such as is described and claimed in said letters patent." This expression is, to be sure, obscure, and on a strict criticism might, perhaps, be held not to be responsive; but, if any pleader is content to express himself obscurely, the rule is well settled that the adverse party is entitled to construe what is set out in the way most favorable for himself. The word "alleged" we think may be fairly construed to mean "alleged in the bill." The words quoted are followed by a statement that the larger part of what the respondents have sold was under a license, and that, as to the remainder, respondents deny "that such sale was in violation of, or infringement upon, any rights of the complainant." These latter words do not neutralize the others quoted, but must be construed as only intended to guard against too wide an admission. With this construction, the answer, in this particular, is responsive, and sufficiently admits infringement.

Another ground of defense is that the application, or specifications, do not describe "the manner and process of making, constructing, and using" the product "in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which they appertain, or with which they are most nearly connected, to make, construct, and use the same." The claim here is for the "manufacture or composition of matter," as nominated by the statute, or, in other words, the product. Of course, the portion of Rev. St. § 4888, requiring that the manner and process of making, constructing, and using shall be described in the application, applies as well to a "manufacture or composition of matter" as to any other subject-matter of invention or discovery to which the patent laws appertain. The respondents put their proposition as follows:

"There is no evidence, except such as the patent furnishes, that any fabric can be made by the use of the devices described, and even that fails to show that such a fabric as is claimed can be made by the use of this device."

The law is settled that, as to every point touching the validity of a claim, the patent itself is prima facie evidence, (Mitchell v. Tilghman, 19 Wall. 287, 390,) although in many cases the presumption which it affords is very slight, and purely technical. We are not shown any proofs in the record in any way meeting this presumption. Respondents have not explained to the court, either by proofs or otherwise, that the patent fails to show that the fabric claimed cannot be made by the use of the devices described; and courts of law cannot assume to decide questions of this nature, unless of the most simple and ordinary character, without assistance. The record shows that the respondents were the agents of the Glenark Knitting Company from the time of its organization, and were the sellers of its manufactures, including those complained of in the pending bill. It further shows that the Glenark Knitting Company held a license from the complainant, which expired only a few weeks before the bill was filed. The complaint

seems to be that after the license expired the **Glenark Knitting Company** continued to manufacture, and respondents continued to sell, the alleged infringing fabrics; and the portions of the answer already referred to admit that the larger part of the fabrics sold by the respondents was made "by a person or corporation"— meaning, of course, the Glenark Knitting Company—"licensed by the complainant to make the same." It also appears that the respondents were not only the general agents of the manufacturing corporation in question, but were themselves dry-goods commission merchants. Therefore, it may well be assumed that they had precisely the practical knowledge required to enable them to inform themselves touching the various requisites appearing on the face of the patent in question, or that, if they failed in the particular experience necessary therefor, before accepting a license from the complainant, they would inform themselves through persons who were suitably skilled. While none of this operates as an estoppel, yet, taken together, it affords a presumption in favor of the patent. On this particular point there are no countervailing matters brought to the attention of the court, and the presumptions stated must stand. The same line of reasoning, and indeed the same suggestions, meet the objection of respondents that the complainant's patent was not practically useful.

The criticism of the respondents that the complainant's claim is for a different invention from that described in the specifications and shown in the drawings, on the ground that the plush threads may appear through the knitted surface when the wales are distended, cannot be sustained. The claim is plain to the effect that no portion of the plush threads appears "on the knitted face," without any reference to any question whether or not they may be visible through it when the fabric is not in its normal condition, and both parties must stand or fall by that construction.

The principal defense rests on the claim of anticipation, wholly by publication in foreign patents. So far as mere public use or sale are concerned, they alone would not affect the complainant's claim, unless they transpired within the United States. Rev. St. § 4920; Gandy v. Belting Co., 143 U. S. 587, 12 Sup. Ct. Rep. 598. Neither would anything found in any prior device aid the defense, if it was of an accidental character of which the parties using it never derived the least hint. Tilghman v. Proctor, 102 U. S. 707, 711. The rule on this point is very neatly stated by Judge Taft in Pittsburgh Reduction Co. v. Cowles Electric Smelting & Aluminum Co., 55 Fed. Rep. 301. So far as prior publications are concerned, it was settled in Seymour v. Osborne, 11 Wall. 516, 555, as follows:

"Patented inventions cannot be superseded by the mere introduction of a foreign publication of the kind, though of prior date, unless the description and drawings contain and exhibit a substantial representation of the patented improvement in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains to make, construct, and practice the invention to the same practical extent as they would be enabled to do if the information was derived from a prior patent. * * * Whatever may be the particular circumstances under which the publication takes place, the account published, to be of any effect to support such a de-

fense, must be an account of a complete and operative invention, capable of being put into practical operation."

This was reaffirmed as late as Eames v. Andrews, 122 U. S. 40, 66, 7 Sup. Ct. Rep. 1073. This general rule, however, is subject to the qualification—which involves a fundamental principle of patent law—that, if the prior publication contains an omission which would ordinarily be supplied by one skilled in the art, the omission will not avail the subsequent patentee. Cohn v. Corset. Co., 93 U. S. 366; Downton v. Milling Co., 108 U. S. 466, 3 Sup.. Ct. Rep. 10. In Cohn v. Corset Co., the court also held (page 377) that where, as in the case at bar, the claim is for the manufacture, and not for the mode of making it, the important inquiry is whether the prior publication described the product.

In Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. Rep. 825, the court, making a further application of the rule of Tilghman v. Proctor, ubi supra, said, (page 161, 145 U. S., and page 827, 12 Sup. Ct. Rep.,) referring to the particular device claimed to have been anticipatory, as follows:

"Their device evidently approached very near the idea of an equalizer; but this idea did not apparently dawn upon them, nor was there anything in their patent which would have suggested it to a mechanic of ordinary intelligence, unless he were examining it for that purpose. It is not sufficient, to constitute an anticipation, that the device relied upon might, by modification, be made to accomplish the functions performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

In Rob. Pat. § 335, appears the following, which is very pertinent and helpful in the consideration of the English patents set up in this case as anticipatory:

"So when the inventor of the patented invention has included in the art or instrument some act or part, without perceiving its significance, and thus, in patenting it, fails to specifically describe such part or act, although, if his invention had been practically employed, such act or part might have become known to the public, his patent does not place it in their reach."

The principles stated and authorities cited are sufficient to secure a proper application of the facts shown by the record in this cause.

To defeat one who has worthily revived something useful by his own original genius, merely because it had become practically lost in some foreign and forgotten publication, is sufficiently hard, without extending the law touching the same beyond its proper construction. Rev. St. §§ 4886, 4920, excluding inventions and discoveries which have appeared in foreign and other publications or patents, relates only to improvements "patented or described." This phraseology is not ordinarily met by showing that the subject-matter of the new patent was merely embraced or hidden away in what is claimed to have anticipated it. On this point the principle of Tilghman v. Proctor, ubi supra, must receive a broad application. In view of this, the court is unable to perceive any anticipation in any of the foreign patents in the record, unless it be that of Keely & Wilkinson. All the others patent the process, and not the product,

so that what is claimed in the case at bar had not been patented by them, as that word is found in the sections of the Revised Statutes referred to. Some of them may describe in a general way a product having its different faces of different material, but none of them go to the extent of describing a product with a clean knitted face; that is, with the face not penetrated by the threads of the other face. This was perhaps expected to exist, or not exist, in each of them, to a certain extent, according to the skill used in the process of manufacturing. In that respect the claim of the complainant carries the art to a complete and perfect standard, which certainly was not described by any of the patents referred to, unless it be that of Keely & Wilkinson. Therefore, in none of them was the product patented or described, to use the language of the statute referred to. But the respondents claim that it can be manufactured by the processes of the anticipatory patents, or by some of them. This is fully met by the rule of Tilghman v. Proctor, and Topliff v. Topliff, each ubi supra.

The court cannot, however, dispose so easily of the Keely & Wilkinson patent. Although this uses frequently the words "looped or elastic fabrics," yet it plainly includes knit goods, because it contains the expressions, "woven, knit, or looped together," and "the common stocking frame." In one place it says that the parts described are nearly similar to those of the old knitting frame, and familiar to all stocking weavers. It describes, claims, and patents both the manufacture or the product and the process. For the most part, it describes the materials as cotton and silk only, but the claims broaden out to cover all kinds. Its fabric is composed of three or more threads,—one or two of cotton, and two of silk, where cotton and silk are used,—in which the cotton thread is interposed between the two silk threads, the silk forming both the outside and the inside of the completed article. In many places the description is limited to gloves and stockings, but the patent extends to all looped or elastic fabrics of several threads. So far it follows the complainant's claim in the case at bar. It also further follows it by making the outside and inside wholly of silk, it being, of course, again understood that silk stands for whatever material may be used.

Respondents also proved by one of their witnesses that this patent shows a fully equipped and organized machine for producing the fabric therein described, so that any person of any skill in the art of knitting could make such fabric upon such machine. This is not contested by any proofs offered by the complainant. The only thing found in the proofs for the complainant touching this patent, is that it makes no allusion whatever to a fabric of any kind having a smooth face and a plush face. This does not meet it. The plush face is no part of complainant's novelty. It appears by his specifications that the plush is raised after the knitting is completed, the fabric being by subsequent operation subjected to the action of an ordinary card, bringing out the plush in the ordinary manner. Therefore, the mere fact that the English patent does not allude to a plush face would not be

effectual for the complainant, because, if its fabric was in other respects the same as his, the ordinary skill of a person familiar with the art would easily raise the plush. In other words, if the anticipatory patent showed the exact fabric of the complainant, lacking only the fact that it had been plushed, this would, perhaps, be sufficient to defeat the complainant. Nevertheless, it is plain that no fabric would defeat him which was not capable of being plushed on one face. This proposition the court will recall further on.

The only other proof offered by the respondents touching this matter is as follows:

"The British patent to Keely & Wilkinson clearly discloses a fabric formed by the plain loop-stitch knitting process from three or more yarns, two of high-grade material, such, for example, as silk, and another or others of lower grade; one yarn of high-grade material appearing upon one face, the other high-grade yarn appearing upon the opposite face, and the low-grade yarn or yarns being enveloped or covered by the high-grade yarns. In this case neither of the high-grade yarns forming one face passes through the fabric so as to appear on the opposite face, nor does the intermediate low-grade yarn or thread appear upon either face. In the production of this fabric, a well-known principle in the art of knitting is employed, namely, that of laying the yarns upon the needles in the order in which it is intended they shall take in the fabric; it being well known that where a plurality of yarns is laid upon the needles, one in advance of the other or others, the one uppermost in the hook, or nearest the end of the needle, will be buried beneath or appear upon the back of the yarns below; and, where three or more yarns are placed upon the hooks of the needles in successive order, the intermediate yarn or yarns will be enveloped or covered by the outside yarns, one of the latter of which will form one face of the knitted goods, and the other the other face, neither of the face yarns passing through the fabric so as to show upon the opposite face."

This, in connection with the established fact that the machine of the patent is operative, meets every requirement of complainant's fabric, except two. One relates to the capability for plushing of the Keely & Wilkinson fabric. The court, as a court, is unable, from the proof in this case, to determine this question, whatever it might accomplish personally by study of the patent itself. Keely & Wilkinson, at one point in their specifications, describe their method of "piling" one of their fabrics, but whether this relates to their knitted fabric under discussion has not been properly explained to the court. The patent, with its specifications, is complicated, and contains numerous subject-matters; and, although some judges may have sufficient technical knowledge to interpret and apply its various particulars, yet others may not. No court, therefore, should assume to pass on them without proper explanation in the record, as well as in the statements of counsel. The entire burden on this point being on the respondents, and the proofs in the record being meager, and insufficient to inform the court, it is unable, according to the rules of law, to find for the respondents that the fabric of Keely & Wilkinson is susceptible of plushing, according to the intention of the fabric of the complainant, with reference to the uses for which it is plainly adapted.

The other element lacking in the respondents' testimony quoted relates to the "clean knitted face." The product of Keely & Wilkinson's patent appears to be a solid knitted fabric, homogeneous throughout, except only that it contains three or four different threads. The respondents' testimony, already quoted, apparently admits this. The fabric of the complainant, however, has what is described by his counsel as a self-sustaining face. Perhaps it would not be safe for the court, or for the complainant himself, to use this word to its full extent, or even according to its ordinary meaning. The court does not find occasion to decide between the litigants with reference to their various refinements touching the word clean; but it is sufficiently plain that the words clean knitted face mean a fabric not homogeneous, and not knitted solid, or through and through. While the claim does not, in terms, refer to the specifications for an explanation of its various parts, yet there can be no doubt that a clean knitted face means something fully as self-sustaining with reference to the other face as though the other face had been woven, and not knitted. The knowledge of the fact brought to the court by the specifications—a fact of so simple and universal a character that the court may act on it without their aid—that various kinds of plush goods with a knitted or woven face have been made and used, emphasizes and makes clear this proposition. On account, therefore, of the lack of a clean knitted face in the Keely & Wilkinson fabric, it was insufficient to anticipate the patent in controversy.

Decree for an account; complainant to file draft decree on or before September rules, and respondents to file corrections of decree on or before September 16th.