CROWN CORK & SEAL CO. OF BALTIMORE CITY v. STANDARD STOPPER CO. et al.

(Circuit Court, S. D. New York. October 25, 1904.)

1. PATENTS—NOVELTY—SUFFICIENCY OF DESCRIPTION IN PRIOR PUBLICATION.
    A prior publication in a paper, patent, or otherwise, will not negative the novelty of an invention unless it describes a complete and operative invention capable of being put into practical operation, or contains such a disclosure of the invention that any omission would ordinarily be supplied by one skilled in the art.

2. SAME—INFRINGEMENT—IMPERFECT CONSTRUCTION OF INFRINGING ARTICLE.
    Infringement cannot be avoided by simply constructing the patented thing so imperfectly that its utility is diminished, but such a colorable variation or change is merely evidence of an attempt at evasion by narrowing the function of usefulness of the device infringed.

3. SAME—BOTTLE STOPPERS.
    The Painter patents, No. 468,258, covering broadly a bottle-sealing device consisting of a flat disk of wood or similar material inclosed in a hard metal cap, preferably of tin plate, having a pendent flange provided with corrugations, and adapted to be bent into locking contact with a shoulder on the neck of the bottle, and No. 582,762, for a specific form of construction of such general invention, were not anticipated nor deprived of patentable invention or novelty by anything in the prior art. Claims 1, 2, and 3 of the first patent and 1 and 2 of the second also *held* infringed by the device of the Patterson patent, No. 682,995.

In Equity. Suit for infringement.

Wetmore & Jenner and Robert H. Parkinson (John C. Rose, on the brief), for complainant.

Phillip, Sawyer, Rice & Kennedy, for defendants.

TOWNSEND, Circuit Judge. Complainant, by its bill, seeks an injunction and accounting by reason of alleged infringement of its patents No. 468,258, dated February 2, 1892, and No. 582,762, dated

May 18, 1897, both granted to William Painter for improvements in bottle-sealing devices. The object sought and successfully accomplished by the patentee was to provide an inexpensive substitute for the long cork, capable of very swift application and of swift and easy removal by the ordinary user, and free from the objections of injury to liquid from use of a cork or the re-use of the ordinary bail stopper, and so perfect in its sealing qualities that it would withstand an interior pressure of 150 pounds. The means employed comprised a thin, flat disk, composed, preferably, of woody matter and gum or other similar materials, inclosed in a hard metal cap, preferably of tin plate, said cap having a pendent flange, which so encircles the periphery of said disk as to confine it against lateral expansion, said flange being provided with corrugations so as to afford circumferential resiliency, and thus be adapted to be bent by lateral pressure into conformity with an annular engaging shoulder on the neck of a bottle. The lower edge of said flange has a projected edge capable of engagement with a lever, whereby the whole cap may be removed from the bottle.

The construction, in a preferred form, of the patented cap, is shown by the following copy of Fig. 2 of patent No. 468,258:

The claims in suit of patent No. 468,258 are as follows:

"(1) The combination, substantially as hereinbefore described, of a bottle having on its head an annular engaging shoulder, a sealing-disk, and a metallic sealing-cap which encircles the periphery of the disk and has a flange which is bent into locking contact with said shoulder, and which also has a projected edge to afford a surface with which a bottle-opener may reliably engage for detaching the cap from the bottle.

"(2) The combination, with a bottle having on its head an annular locking-shoulder and below said shoulder a projecting surface, of a sealing-disk and a hard metal sealing-cap having a flange which is bent into locking contact with said annular shoulder and has a projecting lower edge for engagement by a bottle-opener lever fulcrumed on the projecting surface of the bottle below said edge.

"(3) The combination, substantially as hereinbefore described, of a bottle having a head provided with an annular engaging shoulder, a sealing-disk, and a hard metal sealing-cap having a flange which encircles the disk and is bent into locking contact with said shoulder and is corrugated in the bent portion in the line of said locking contact."

It was not contended on the argument that the patents in suit were anticipated. But it was contended that, in view of the prior art, no invention was required to construct the patented cap. The arguments in support of this contention will be considered in the order in which they were presented by defendants.

It was first argued that patent No. 468,258, hereafter called the "first patent," does not purport on its face to be a pioneer. It contains four disclaimers, which refer to (1) prior "metallic sealing caps; * * * (2) of tinned sheet iron * * * flaring pendent flange, * * * the lower edge of flange ornamentally corrugated; * * *

(3) of hard metal plate  *  *  *  provided with a flange cut or slotted; * * * (4) pendent spring-arms, which were corrugated at their inwardly-bent extreme lower ends to afford strong fingers at their points of contact with an engaging shoulder on the bottle." The patents relied on to illustrate the scope of these disclaimers and to defeat the claim of invention will be discussed in the order in which they appear in defendants' brief.

Painter patent No. 468,226, was not pressed on the argument. Although issued on the same date as the first patent in suit, the application therefor was subsequent to the application for said first patent, and for this and various other reasons it need not be discussed.

The Berthoud French patent of 1877, and the Gedge British patent of 1878, founded on the Berthoud invention, with certain additions, next discussed by the defendants, may be treated together under the head of Berthoud-Gedge. Most of the argument on both sides as to validity is necessarily directed to a discussion of the disclosures of this patent and the history of its devices. The defendants' expert fairly states the invention of Berthoud as follows:

"A cap of tin [tinned] sheet iron having its flange at right angles to its top is forced down upon a glass vessel, there being a sealing ring or disk interposed between the cap and the vessel, and the cap is then affixed to the glass vessel by bending in the flange of the cap with a rubbing or milling tool, the flange being bent in without shock or jar and far enough to hold the cap in place on the vessel."

Berthoud-Gedge further states that the cap may be removed "by inserting any pointed instrument beneath it"—one of the ways described by Painter in which his cap may be removed. It may be assumed that the edge of the flange of said cap might be sufficiently projected to permit the insertion of such pointed instrument under certain conditions. While Berthoud does not show his cap applied to the specific type of bottle described by Painter, such bottles were old in the art. And inasmuch as the removal either of the Painter or Berthoud cap by a "pointed instrument" is attended with difficulty, and Berthoud subsequently, in his additions, described the use of tearing strips therefor, defendants have shown by Livermore patent of 1866 that it was old in the art to remove caps from receptacles by means of openers which engaged the projected edge of the flange of a cap. It is therefore claimed that:

"The Berthoud contribution to the bottle-sealing art, as it appears on the face of the French patent and on the face of the British patent, is a bottle cap consisting of tinned sheet iron and containing a sealing disk, the cap being locked to a bottle having an annular locking shoulder thereon, by bending the flange of the cap beneath the shoulder, the flange being so bent in that the cap can be removed by inserting a pointed instrument beneath the flange."

And to this may be added the claim that Livermore disclosed a method of removal by a lever such as is shown by Painter. Glass jars containing soup, closed by the Berthoud cap, provided with a tearing tongue, were in use and on sale in this country for several years prior to 1890. The reply to the claim as to the "projected edge" is as follows: The Berthoud-Gedge patents recite that "the closing of the metal on the glass is somewhat dangerous," and propose to remedy this difficulty by the application of gradually applied pressure through

a rubbing tool, so that by a process of spinning or rubbing the edge of the metal might be bent down gradually, or, as the patentee says, "without any shock." This operation would naturally also result in a close-fitting flange edge. In the original Berthoud patent no means of removal was suggested. But in its additions and in Gedge are described the tearing strip or tongue, already referred to, projecting beyond the circumference of the disk, which, being raised, "may be grasped with the handle of a knife, a key, the end of a corkscrew, or any article which will permit the fingers to get a good grip of it. Then, without any great force, the tin may be torn from part or the whole of the surface of the lid or cover so as to produce a section dividing it."

The necessity of this opening appliance and the impracticability of removing the cap with a pointed instrument is emphasized by Gedge, who says, referring to the projected lip, "For without it there would be great difficulty, and even danger, in opening a glass bottle," etc. Berthoud says:

"This arrangement for opening the seal is of as great importance as the seal itself, for, without it it was difficult, and even dangerous, to open a flask which does not have the large base of a tin. The tool used might slip, and thereby wound the person attempting to open the flask."

This cap, therefore, was confessedly by the statements of the patentees capable of application only by a gradual operation, such as that of spinning, and incapable of practical or quick or safe removal by a "pointed instrument." Nor could it be removed by the Livermore opener without material modifications, because the upward movement of its engaging lip would break the Berthoud-Gedge bead, as it would the Painter shoulder. And it is at least doubtful, in view of the conflicting testimony of the experts as to their experiments, whether the Livermore opener, even with the modifications made by defendants, could be practically used with the Berthoud or Painter cap. It would seem, therefore, to be established by the foregoing facts, in connection with the Berthoud drawings, that its spun, uncorrugated, close-fitting flange did not present any such projected edge as that of the first or second claims of Painter, or any edge which could be readily engaged with any opening lever of the prior art. But even if it could be so removed by a pointed instrument or engaged by a lever, the result is totally different in its effect upon the two caps. Painter's cap is not necessarily injured by removal, because only the folds of its corrugations are spread apart, and it may be replaced for temporary use, Berthoud-Gedge, being without corrugations, and therefore having been spun on and fastened necessarily by consequent molecular change in the metal, could ordinarily be removed only by a process of destruction similar to that described by the patentee in the use of his tearing device. There is no evidence that said cap was ever actually removed by an opener engaging the edge of the flange.

The foregoing statement is made upon reasoning from the proved facts, and without reference to the testimony of experts, on the one side, to the effect that the removal of the caps was quickly effected and without injury by the Livermore opener, and of one expert on the other side that in his strenuous efforts, using his "best intelligence to find the most favorable point of attack on the cap by the so-called Livermore

opener [the modified form introduced by defendants], * * * after exerting my utmost strength several times, I failed to produce any useful effect whatever in removing the cap, but did produce a contusion of my hand"; and of another expert that he exerted himself to his apparent utmost without budging the cap, and that he contused his hand also. Berthoud had neither the corrugated flange of Painter nor its equivalent. And herein is found the crucial test whereby Berthoud-Gedge is differentiated from Painter. Berthoud, recognizing "that the operation of setting [resistant metal] upon glass is somewhat hazardous," conceived the idea of subjecting a plain cap "with a right-angle bend" to the action of "a rubbing tool, * * * and to bend down the edge of the metal without any shock," and by means of said gradual rotating pressure effecting a molecular change "the setting of the metal around the neck of the bottle is produced." Painter conceived the idea of providing corrugations in his flange so as to afford "the circumferential resiliency, which is a characteristic feature." This resiliency permitted instantaneous outward lateral circumferential pressure, because the outer folds of the corrugations not only acted as a cushion to prevent shock, but served to transmit such pressure to the inner folds of the corrugations, and effect their hermetical closure with the neck of the bottle. Berthoud constructed a plain metal capsule adapted to be gradually spun onto the bottle neck. Painter constructed a cushioned metal capsule adapted to be instantaneously forced against the bottle neck. Thus the two devices were radically different in conception, construction, function, and result. This and the other fundamental differences previously discussed, in the whole plan of the two structures, indicates the reason why Berthoud and Gedge later suggested the tearing strip as the only practicable means for removal, and why their cap was finally abandoned, and why neither they nor any other inventor or skilled mechanic during the 13 years which elapsed between the date of said patents and the Painter application ever conceived of the possibility of adapting the Berthoud-Gedge construction, or actually modified it, so as to embody the theory of the Painter invention.

The next alleged anticipation discussed by defendants is Whittlesey patent No. 38,617, dated May 19, 1863, for "a cap for fruit jars." The specification states that:

"The nature of this improvement consists in striking up a flat piece of metal into a cap having a flat top, slightly tapering sides, and corrugated flange edge, the object of which is to produce a cheaper, more durable, useful, and ornamental article for sealing cans, jars, etc., air-tight."

The "corrugated flange edge" of this cap, if sufficiently extended, might be bent in so as to grip a shoulder of a bottle neck, and it is claimed that such bending could have been effected by the Berthoud spinning machine. There is no proof of any prior use by Whittlesey in any way like that of the patent in suit, and no statement in the specification of any proposed mode of application of said edge. Whether the corrugations were intended to afford a projected edge to facilitate removal, or to be bent in, as above suggested, or were merely the element specified, which made such a top "a more ornamental article," is not indicated in the patent. The construction specified and claimed of "slightly tapering sides," shown in the drawing as flaring in a down-

ward direction, would seem to indicate that the sloping sides of the cap were to be pressed down against the side of the cap or jar until a tight fit was effected. Whittlesey shows no sealing disk, no shoulder, no engagement.

Counsel for defendants, in his argument in support of noninfringement, referring to defendants' modified Whittlesey cap, admits "that in applying such a cap as this one to a bottle * * * there is nothing but plain metal opposite the locking shoulder on the line of its greatest circumference, which is obviously the line where the greatest pressure is brought to bear by the applying tool," and "that the cap could not be forced down onto such a bottle far enough to compress the sealing disk, if at all, without absolutely stretching the metal, which is precisely what the patentee is endeavoring to avoid, and what his invention was devised to prevent." If Whittlesey disclosed a construction either capable of modification, without the exercise of invention, so as to accomplish the result of Painter, or one which could have been combined by a skillful mechanic with Berthoud-Gedge so as to produce the Painter cap, the question arises why was it subjected to the obscurity of a paper patent for nearly 30 years, when the whole commercial world of bottlers were calling for some substitute for the ancient long cork and bail stopper? It is thought that by reason of the imperfect disclosures of this brief and indefinite patent and its history of obscurity it falls within the general rule that a prior publication will not negative the novelty of an invention unless it describes "a complete and operative invention capable of being put into practical operation" (Seymour v. Osborne, 11 Wall. 516, 555, 20 L. Ed. 33), or contains such a disclosure of the invention that any omission would ordinarily be supplied by one skilled in the art (Chase v. Fillebrown [C. C.] 58 Fed. 374; Downton v. Yeager Milling Co., 108 U. S. 466, 3 Sup. Ct. 10, 27 L. Ed. 789).

In Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, the Supreme Court says:

"Their device evidently approached very near the idea of an equalizer; but this idea did not apparently dawn upon them, nor was there anything in their patent which would have suggested it to a mechanic of ordinary intelligence, unless he were examining it for that purpose. It is not sufficient, to constitute an anticipation, that the device relied upon might, by modification, be made to accomplish the functions performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

The situation herein is aptly stated in Robinson on Patents, § 335, as follows:

"So when the inventor of the patented invention has included in the art or instrument some act or part without perceiving its significance, and thus, in patenting it, fails to specifically describe such part or act, although, if his invention had been practically employed, such act or part might have become known to the public, his patent does not place it in their reach."

See discussion by Judge Putnam in Chase v. Fillebrown (C. C.) 58 Fed. 374, 377, 378.

Butler patent, No. 128,849, of 1872, shows a metal cap stamped down in the center so as to create an "annular depression around its rim

on the under side," and a flange with slitted edges. The cover is secured to the jar by means of melted wax, and by "simply turning in the lower slitted edge of the flange E, * * * gives a neat finish to the jar or bottle, but all danger of the packing wasting out or of the top coming off by accident is entirely and successfully avoided." It is claimed by complainant that the drawings of the Norton patent, No. 78,474, referred to by Butler, show that the edge of the flange is to be turned in under the wax to prevent it from running out and to house or protect the rim of the flange. But, irrespective of this question, a cap constructed to be sealed by hot wax and removed by melting the wax, with the edge of its flange turned in so as not to project and be knocked off, and which has no corrugations and could not use the Painter corrugations because the wax would run out and between them, is so foreign to the Painter construction that it will not be further discussed.

The Drummond patent of 1861, for a paint can, Bellerjean patent of 1868, next discussed in defendants' brief, were not pressed on the argument, and need not be here discussed.

Taylor patent of 1885 is for a self-sealing fruit jar of the ordinary well-known type, except that its circular stopper is fastened down on a shoulder inside the neck of the jar by spring hooks extending downwardly and laterally pressed so as to spring into a recess below the neck of the jar. The hooks are not bent into conformity with the neck or shoulder; there is no cushioning operation; the bottle is closed and opened by springing the side arms in and out by virtue of their elasticity.

The Goulding patent, next reached in defendants' brief, was not pressed on the argument.

Thompson British patent of 1885 is discussed in defendants' brief and upon the argument to show that it was old in the art to provide "a construction in which a projected edge on a cap is used for the purpose of detaching the cap from the receptacle, the edge of the cap being engaged by a suitable opener, the cap being pried or wrenched from the bottle thereby." Thompson is for a metal box with a groove near its top and a conical lid provided with a rim which may be pressed into the groove, and which, the patentee says, may be pried off by a lever. It is very doubtful whether this removal could be thus effected. But if the sole contention of defendants concerning it in this connection, quoted above, be admitted, it is so remote from the Painter and Berthoud-Gedge problem as not to require discussion.

Defendants' cap is manufactured under Patterson patent, No. 682,-995, issued in 1901. Its construction is shown by the following copy of Fig. 5 of the drawings of said patent:

Fig. 5.

The cap, 3, is provided with a downwardly extending flange, 4, which is so slotted, as shown in the drawing, as to provide pendent extensions, which are bent into horizontal folds, shown at 7, "preferably so arranged as to be forced into engagement with the shoulder on the container by bending the leg to which it is connected inward.   *   *   * The fastening device may be readily unlocked by pressing upwardly and outwardly against the fingerhold" at 11.

In support of the defense of noninfringement of claims 1 and 2 of the first patent it is argued as follows:

"(1) The defendants' cap does not have the 'projected edge' feature of these claims, as this 'projected edge' must be defined in view of the language and statements in the specification of the patent.

"(2) Any interpretation of the term 'projected edge' which would cause it to cover the construction of the defendants' cap causes it also to cover numerous constructions of the prior art, as well as a construction specifically stated by the patentee not to have the 'projected edge.'

"(3) The defendants' cap does not have the 'flange bent into locking contact' with the bottle shoulder called for by these claims."

That defendants' flange has a "projected edge to afford a surface with which a bottle opener may reliably engage for detaching the cap from the bottle" (claim 1), or "a projecting lower edge for engagement by a bottle opener lever fulcrumed on the projecting surface of the bottle below said edge" (claim 2), is shown by the drawings of defendants' patent, by an inspection of their caps, and by the undisputed fact that defendants' caps are ordinarily removed by complainant's openers.

The previous discussion disposes of the second contention as to prior art.

The contention as to "a construction specifically stated by the patentee not to have the projected edge" is founded upon the following language in the specification:

"In some instances it is desirable that the edge of the flange be so thoroughly housed within the recess below the engaging shoulder as to practically eliminate the projecting edge feature, and to thereby secure specially high resisting power—as, for instance, with some kinds of malt liquors bottled for shipment to tropical countries—and then either the loops described in my said other application may be relied upon for opening purposes, or the central perforation for receiving a corkscrew, and it will be obvious that, while all of the corrugated caps shown will afford a well-defined, stiff, and strong projecting edge, either of them, on being well compressed on the line of the middle of the recess in the bottle head, will have the entire lower portion of the flange made substantially flush with and merging with the surface of the bottle head below the recess."

Defendants have caused drawings to be made of this Painter construction and of their construction, from which it appears that the effective projection of the lower edge of their flange extensions is less than that of Painter. Hence it is argued that they do not have Painter's projected edge, but one "so housed as to practically eliminate the projecting edge feature." How far the rights of the patentee should be affected, if at all, by the foregoing statement, is a doubtful question. This statement cannot work an estoppel against the rights of the patentee in this case, for this suggested construction is not involved in the claims in suit.   It would seem that it should not be construed as such an admission as would deprive him of the right to proceed against the

user of a cap which, as above shown, does in fact have a cap with such a projecting edge that it is actually removed by complainant's openers in general commercial use. The statement is inserted merely by way of explaining how the "lower portion of the flange" may be utilized to "secure specially high resisting power * * * with some kinds of malt liquors bottled for shipment to foreign countries."

The third contention—that "defendants' cap does not have the 'flange bent into locking contact' with the bottle shoulder"—is without merit. It rests upon the argument that, because defendants have cut out a portion of the flange—a construction suggested by Painter—and have designated the remaining portions of said flange "legs," these extended portions are not part of the flange, but are "spaced locking levers." This contention is highly technical, contradicts the dictionary definition selected by defendants' expert of a flange as "a projecting rim, edge, or rib * * * used * * * to keep the object in place, to facilitate its attachment to another object," and, if permitted, would defeat this meritorious invention, so far as concerns these claims, by the mere mutilation of one of its members so as to escape the charge of infringement.

The defense of noninfringement of the third claim for a flange "corrugated in the bent portion," etc., is founded upon the argument that the first patent is limited to vertical corrugations. The specification of the first patent describes and the drawings show only such corrugations. And it is contended that the functions therein alleged for corrugations can only be discharged by vertical corrugations, and that defendants' horizontally bent flange extensions are not corrugations, and that their folds do not discharge any of the functions claimed for the corrugations of said first patent. These contentions are only sustained so far as it is shown that the horizontal folds of defendants' flange, which are functionally and actually corrugations, have been so constructed in the attempt to escape infringement that they are not adapted to be so effectively applied to bottles having shoulders of different heights, or so safely applied without danger of fracture as those of complainant. The elaborate and ingenious argument for defendants on this point only serves to show that their caps appropriate the functions of the corrugations, but discharge them imperfectly. No man is permitted to evade a patent by simply constructing the patented thing so imperfectly that its utility is diminished. Walker on Patents, § 376. Such a colorable variation or change is merely evidence of an attempt at evasion by narrowing the function of usefulness of the device infringed. Blake v. Robertson, 94 U. S. 728, 24 L. Ed. 245; Whitely v. Fadner (C. C.) 73 Fed. 486. The patentee has described and shown as the best form of his generic invention vertical corrugations, and in one of his claims, not in suit, has specifically claimed them. But the patentee in the specification describes the very construction adopted by defendants as follows:

"Such of my caps as have a slotted flange have in substance a series of pendent arms; but they differ from all prior cap arms in that each arm is so far corrugated that each inner corrugation is adapted to and is forcibly conformed to the contour of the engaging shoulder on a bottle, and therefore such variations as are liable to and do occur in the form and location of said shoulder do not and cannot cause any variations in the relation of the top

of the cap to the upper surface of a sealing-disk, which is forced upon and held in close contact with the mouth of the bottle during the bending of the flange of the cap into locking contact with the engaging shoulder on the bottle."

In fact, a reading of the specifications shows that every feature of defendants' cap and the functions of their corrugations and projected edge are stated by the patentee as elements of his generic invention, but are in many cases distinguished because they are not thought by him to exhibit the best form of the possible embodiments of his invention. It is thought, therefore, that the patentee under the broad claims in suit is entitled to protection against appropriation of his invention as already construed, and which consisted in the conception of a new construction peculiarly adapted for use with a certain well-known type of bottle, and when so used presenting new advantages and hitherto undeveloped practical possibilities of instant sealing engagement, adequate for all ordinary commercial requirements, and without danger of breakage, between a bottle and a cheap, safe, sanitary cap, by means of corrugations serving the purpose of cushions, which both enable the flange to be bent into locking contact with the neck of the bottle by lateral pressure and at the same time protect the neck of the bottle against danger of breakage by the transmission of pressure through the outer folds upon the inner folds of the bottle, said cap being provided with means for instant removal in its projected edge.

Painter patent No. 582,762, hereafter called the "second patent," covers a specific form of the generic invention, wherein the horizontally folded flange is in the form of a bead, which provides the cushioning effect of the vertical corrugations of the first patent. The claims in suit are as follows:

"(1) A hard-metal sealing-cap having a flange provided at its edge with an integral bead, having an open interior and adapted to be bent into engaging contact with a bottle head substantially as described.

"(2) The combination substantially as hereinbefore described, of a bottle having on its head an annular locking shoulder, a sealing-disk, and a hard-metal sealing-cap provided with a flange having a bead at its edge, the said disk being under sealing-pressure on the lip of the bottle, and said bead bent into locking-contact with the bottle-head adjacent to the locking-shoulder, and confining the disk in sealing contact with the coincident surface of the bottle."

Infringement of these claims is so clear that the arguments thereon will not be discussed. The specification of the patent in suit describes defendants' construction and operation as follows:

"For many kinds of service the beads may be open at short intervals at right angles to the rounded edge of the flange. It is not necessary, with these caps, to always compress the entire bead, it being quite practicable to obtain good locking contact if pressure be evenly applied to the bead at five or six different but equidistant points."

But it is argued that these claims do not cover a patentable invention in view of the prior art. British patent to Thompson, No. 2,910, already briefly discussed, is chiefly relied on to support this defense. It shows a flaring metal cap and a beaded flange. The experts are hopelessly in conflict as to whether or not the Thompson bead is shown as containing a wire such as is ordinarily used in such constructions. If it does, it could not be bent into an annular groove provided near the

top of the metal box to which the cap is to be applied. The patentee says it can thus be bent in by pressure, and the weight of testimony supports this statement and the contention of defendants to this effect. If it can be so bent in, it shows a construction within the terms of said first claim, except that it is "adapted to be bent into engaging contact" with a "metal box" instead of a "bottle head." Does this Thompson British patent so far disclose the conception of the second Painter patent as to invalidate it? The patentee says:

"This invention has for its object a cylindrical 'tin' or other metal box and lid constructed in such a manner that when the lid is down on the box a sunken bead or groove in the box allows room and a fulcrum or abutment for a lever to be used to raise the box lid or cover, and so that no amount of side crushing shall separate the bottom from the box, and yet both bottom and lid can be put on and held without solder."

The whole problem solved by Thompson is comprised in this statement. There is no problem of uniting metal with glass, no cushioning bead, no sealing disk, no sealed joint, "the lid also made slightly conical to fit tightly on B (the upper conical part of the tin box), with space to spare between B and the top to allow for wear and the repeated forcing down of the lid." The "impervious fit" is effected by pressure on the upper of two conversely beveled surfaces. It is true that "to make the lid extremely tight" the bead is pressed in, but there is no cushioning against glass by means of pressure exerted on the outer rib and transmitted to the inner one. It is very doubtful whether this construction could be used practically with a sealing disk. The following citations from the testimony of complainant's expert, See, further emphasize the distinctions between the Thompson patent and the Painter second patent:

"The idea is to force the cover tightly down on the box in the hope that the tight fitting will make the joint liquid tight. I can say that in the absence of grinding to place, the joint, while firm and tight, would not resist liquid or gaseous pressure. It is suggested that in some cases the bead of the cover may be pressed or turned into the groove of the box, but it is manifest that, if this be done, while it would serve as a lock, and prevent the actual displacement of the cover, the operation would tend to destroy such tight fitting as had been secured when the cover was forced to place on the head of the box. It is to be borne in mind that the tightness of the closure is due not to any inturning of the bead, but merely to the tightness with which the cover is forced on the head of the box. The cover having been forced on, it is as tight as it can ever become under any circumstances, and no inturning of the bead has any effect in arriving at that tightness of the joint. It merely increases the difficulty of breaking a joint in the formation of which it took no part. * * * In the Painter invention the sealing work of the cap is done entirely by its strains in a vertical direction on a sealing medium, and no sealing effect is gotten by peripheral engagement of the flange of the cap with the external portion of the bottle mouth; and if such close fitting, for the purpose of forming a tight joint, were provided, it would detract from, instead of add to, the sealing capacity of the Painter invention. Reversely, in the Thompson construction, the joint of closure is a peripheral one, and the introduction of the sealing disk involving vertical action would detract from, instead of add to, the merit of the peripheral joint. The two systems are distinctly different. The Painter invention is not only adapted for, but is admirably adapted for, the closure of bottles containing liquids under pressure—gaseous pressure. The Thompson device is not at all adapted for that purpose, and the system could not be practically applied to that

136 F.—14

purpose. To realize the Thompson system in bottling liquids under gaseous pressure it would be essential to form the exterior of the neck of the bottle with a taper made with practically unattainable accuracy, and then to form the cap of substantial, thick material, and then to accurately grind the cap in place on the bottle neck. This would be so very expensive as to be quite out of the question for practical purposes. It would necessarily individualize each cap with its own bottle, which of itself would be fatal to availability in the common bottling art. Again, a small particle of foreign matter, a mere grain of dirt, getting accidentally onto a ground joint before it is put together, is fatal to the tightness of that joint. Again, assuming a nicely made cap, properly ground to the bottle, and properly seated thereon to close the bottle and retain its contents, any tinkering with this cap in the way of internally compressing its lower edge would distort the cap and ruin the fit. This Thompson affair may be a very admirable spice box, but the very system on which it is founded precludes its practicable availability in the bottling art."

It is believed that the foregoing discussion covers all the questions which must control the decision of this case. But if there were any doubts as to the validity of said patents, or the utility of the Painter inventions, the overwhelming evidence of the commercial success of the patented cap, its general use, and the extent to which it has displaced all prior devices used for analogous purposes—facts so generally known that the court may take judicial notice thereof—must turn the scale in its favor.

Let the usual decree be entered for an injunction and an accounting.