## WICKELMAN v. A. B. DICK CO.

(Circuit Court of Appeals, Second Circuit.    June 24, 1898.)

### No. 98.

1. PATENTS—NOVELTY—ACCIDENTAL PRIOR PRODUCTION.

Novelty is not negatived by a prior accidental production of the same thing, when the operator does not recognize the means by which the accidental result is accomplished, and no knowledge of them, or of the method of their employment, is derived from it by any one.

2. SAME—STENCIL SHEETS.

The Broderick patent, No. 377,706, for a coated paper sheet for stencils, *held* to cover a novel and meritorious invention, and also *held* infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by the A. B. Dick Company against Frederick A. Wickelman for alleged infringement of a patent for stencil sheets.  In the circuit court a decree was rendered for an account of profits and damages (74 Fed. 799), and afterwards the cause was heard on exceptions to the master's report, and such exceptions were overruled.   80 Fed. 519.   From the final decree thereafter rendered the defendant has appealed.

F. A. Wickelman, pro se.

Richard N. Dyer, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge.    Error is assigned upon this appeal of a decree adjudging the validity of letters patent No. 377,706, granted February 7, 1888, to John Broderick, for coated paper sheet for stencil, and the infringement thereof by the defendant.    The appellant insists that the court below should have held the patent void for want of novelty.    The patent covers a meritorious invention.    The subject is a transmitting printing sheet to be used as a stencil for duplicating upon other sheets the words or designs impressed upon it, but differing from a stencil in that the letters or figures are not cut out.    In the ordinary stencil, loop letters such as O, D, Q, etc., cannot be perfectly formed, for, if completely cut out, the center is lost. The invention is especially valuable because it is adapted for use with a typewriting machine, and enabled for the first time a commercially useful, type-impressible stencil to be made, and thereby the duplication of a greater number of copies than can be transmitted by carbon sheets.    The work done upon it is practically the equivalent of ribbon work, and resembles it so closely that it is difficult to detect whether the prints made from it are not actually typewriter work, and the thousandth copy is as perfect, substantially, as the earlier copies.

In the prior art, stencil sheets for duplicating handwritings were made from waxed or gummed paper cut or perforated through the wax and the fibers of the paper.    In some instances these sheets of paper, covered with wax, were placed upon a roughened plate, and when the letters were traced upon it the plate would abrade the

sheet, causing minute perforations through which the ink could be transmitted. In others, ink of a peculiar acid was used to eat through the paper. And in others the writing was done by a notched or roughened wheel, which forced its way through the sheet. The wax coating commonly used was hard, and measurably brittle.

The patentee conceived the idea of employing a porous basic material for the sheet, which would not require to be cut or perforated, and coating it with a gummy or waxy substance, impervious to ink, of such a consistency that it could be displaced at the lines of impression so as to leave the inherent interstices in the paper exposed, for the transmission of the ink. In his experiments with different kinds of basic materials he found the Japanese paper known as "yoshino" to be admirably adapted for the purpose in view, having sufficient porosity, thinness, and toughness to meet all the necessary conditions. This kind of paper had never previously been employed for stencil sheets. Among the coating substances which he tried he found that paraffine of about 120° Fahrenheit, fusion point, was suitable. In describing the way of practicing his invention he states that such paper and such a coating material are preferentially to be used in preparing the sheet. The patent, however, is not limited to the use of these constituents in preparing the sheet. The specification points out that any sheet of the requisite porosity, thinness, and toughness may be used, and may be coated with any gummy or waxy substance of a consistency that will yield upon pressure so as to expose the interstices of the basic material at the lines of impression without abrasion. The claims are as follows:

"(1) A transmitting printing sheet consisting of a thin, porous sheet through which ink is readily transmitted, such as Japanese dental paper or yoshino, filled or coated with a substance impervious to ink, as paraffine, substantially as described.

"(2) A transmitting printing sheet consisting of a thin porous sheet through which ink is readily transmitted, such as Japanese dental paper or yoshino, filled or coated with a substance impervious to ink, as paraffine, and having this filling or coating removed at the points or lines of printing, substantially as described, for the purpose specified.

"(3) A prepared sheet for stencils, consisting of a sheet of Japanese dental paper or yoshino, coated with a substance impervious to ink, substantially as described."

We entertain no doubt that, if the patentee was the first to make a transmitting sheet which, by reason of the peculiar characteristics of the basic material, and of the coating, was new and useful, what he did involved invention, and entitled him to a patent. Inventive thought was involved in the conception that materials could be employed that would dispense with cutting or puncturing instrumentalities altogether. Even if what he did was merely to employ a basic material differing in the degree of porosity and toughness, and a coating differing in the degree of softness, from that which had been previously used, he accomplished thereby a new result. Each of these modifications was necessary to successfully introduce the new principle, which differentiated his production from the stencil sheets of the prior art.

The only evidence in the record which tends to negative the novelty of the invention is the testimony relating to the waxed paper made

and sold by the defendant prior to May 20, 1886, the date of Broderick's application for the patent. Since 1871 the defendant had been engaged in the manufacture and sale of waxed paper for use as waterproof wrappers upon candy, meat, and other articles. In that business he used many different kinds of paper, and waxed them with coatings of different consistencies, including paraffine at different degrees of fusion. He testifies that he coated with wax, including paraffine ranging from 110° to 140°, every kind of paper he could find in the market, from the lightest tissue to packing paper; and that in 1878 and subsequently he used considerable Japanese paper, some of which was yoshino. Until after the date of the application for the patent in suit, he had never attempted to make any wax paper for stencil sheets, and the idea of its adaptability for that use had never occurred to him. Early in 1887 the complainant, whose officers were experimenting in the production of sheets for manifolding typewriting, employed him to make stencil sheets. After he had tried crepe lisse, nainsook, mull, and tarletan, and different kinds of paper, with coatings of various consistencies, Mr. Dick instructed him to try a soft wax, and he then made coatings of a greater degree of softness. During these experiments, at his suggestion, a West India tissue paper was tried. No suitable paper was found, however, until some time in the summer of 1887, when, at the suggestion of Mr. Dick, yoshino was tried, and was successfully coated. This evidence indicates quite persuasively that the defendant was not conversant with yoshino paper. Assuming, however, that he had used it, and had coated it with soft paraffine, it is obvious that he had done so in ignorance of the characteristics of the paper and of the necessary consistency of the coating, and that the product, if capable at all of use for a stencil sheet, was an accidental product, which contributed nothing to the prior art of making such sheets.

In disposing of the defense in the court below, Judge Wheeler, speaking of the evidence for the defendant, said:

"It falls short of showing satisfactorily, and beyond fair doubt, that he had actually ever waxed this kind of paper; and far short of so showing that he had ever made such blanks as these for stencils, or had, by waxing and shaping, made this kind of paper in the form suitable for such stencils."

In these observations we entirely agree.

The case is one for the application of the doctrine, well settled in the law of patents, that novelty is not negatived by a prior accidental production of the same thing, when the operator does not recognize the means by which the accidental result is accomplished, and no knowledge of them, or of the method of its employment, is derived from it by any one. Pittsburgh Reduction Co. v. Cowles Electric Smelting & Aluminum Co., 55 Fed. 307; Chase v. Fillebrown, 58 Fed. 377; Topliff v. Topliff, 145 U. S. 161, 12 Sup. Ct. 825; Tilghman v. Proctor, 102 U. S. 707, 711.

"The chance operation of a principle, unrecognized by any one at the time, and from which no information of its existence, and no knowledge of a method of its employment, is derived by any one, if proved to have occurred, will not be sufficient to defeat the claim

of him who first discovers the principle, and, by putting it to practical and intelligent use, first makes it available to man." **Andrews v.** Carman, 13 Blatchf. 308, Fed. Cas. No. 371.

The assignments of error present no other question than that of the validity of the patent. They are not well founded, and the decree is accordingly affirmed, with costs.