AMERICAN SALES BOOK CO. et al. v. CARTER–CRUME CO., Limited, et al.

(Circuit Court of Appeals, Second Circuit. December 4, 1906.)

No. 171.

PATENTS—ANTICIPATION—MANIFOLDING SALESBOOK.

The Beck patent, No. 647,934, for a manifolding salesbook and holder, the purpose of the improvement being to enable the user to manipulate or remove the leaves of the pad without soiling the fingers on the carbon transfer sheet, which is accomplished by cutting away the corner of such sheet, is void, for anticipation by the prior Mooney book and the Oldfield patent, No. 517,359; the books in both cases having a notch in the carbon sheet, and being capable of use in the manner contemplated by the patent—the first without alteration, and the second without alteration, or by a mere change in the location of the notch, and it being shown that they were in fact so used.

Appeal from the Circuit Court of the United States for the Western District of New York.

Appeal from interlocutory decree of the United States Circuit Court for the Western District of New York, adjudging validity, and infringement by defendants, of claims 2 and 3 of complainants' patent No. 647,934, granted April 24, 1900, to Warren F. Beck, for improved manifolding sales book and holder. The opinion of the Circuit Court is reported in 145 Fed. 939.

Warfield & Duell (Charles H. Duell, of counsel), for appellants.
M. B. Phillipp, for appellees.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The patentee says: .

"My invention relates to improvements in the pads used by merchants and others in taking manifold copies of orders, &c., and to the holders for such pads, the objects of my improvements being, first, to provide a simple and cheap form of holder wherein a pad and a carbon or transfer sheet may be placed and replaced independent of one another, and, second, to provide means for manipulating the leaves of the pad without touching the transfer-sheet with the figures. * * *

"The transfer-sheet F is folded down over the pad, as shown in said figure, and has one corner cut away at f, leaving exposed a corner of the leaves of the pad. It will readily be seen that if the holder and pad are held in the left hand the individual leaves of the pad may be taken between the thumb and finger of the right hand at the upper right-hand corner and drawn out and away from the transfer-sheet without touching the fingers to said sheet. * * *

"This type of pad is especially adapted for use where orders are taken from house to house, the leaf or leaves being retained in the pad until the orders are given in at the store and the goods are put up for delivery. * * *

"I do not confine myself to the use of the transfer-sheet having a portion cut away for the purpose herein set forth solely in connection with the holder and pad herein shown, as the transfer-sheet of this character may be otherwise fastened in a holder, * * *. Also instead of fastening the transfer-sheet at the end of the pad it may be fastened along the side thereof. In fact, my invention in this respect comprises any form and arrangement of pad and transfer-sheet wherein the transfer-sheet if left intact as it lies upon the pad would conceal the free or loose ends of the leaves of the pad, thereby rendering it necessary to lift the sheet in order to withdraw the leaves from beneath it in maripulating the pad, the cutting away of a portion of the

transfer-sheet so as to expose a portion of the leaves at or near their free ends enabling this withdrawal to be accomplished without lifting or otherwise handling the transfer-sheet."

The claims in suit are as follows:

"2. The combination, with a manifold-pad, of a holder or cover therefor having a carbon or transfer sheet secured thereto, said transfer-sheet being folded over upon the leaves of the pad at their free ends and having a portion cut away to expose a portion of the leaves at or near their free ends for the purpose set forth.

"3. The combination, with a manifold-pad, of a carbon or transfer-sheet normally resting upon the top of the pad and overlying the leaves thereof, said transfer-sheet having a portion cut away to expose a portion of said leaves at or near their free ends for the purpose set forth, the leaves at their free ends being otherwise concealed by the transfer-sheet."

The court below, discussing the characteristic features of the book of the patent in suit, and the disclosures of the prior art, reached the conclusion that while "the improvement of Beck was not remarkable or a great advance in the art, * * * the patent is not devoid of patentable invention."

The references chiefly relied on by defendants to invalidate the patent in suit are the prior Mooney book and Oldfield Patent No. 517,-359.

As to these defenses the court below said as follows:

"This (Oldfield) patent undoubtedly closely approaches the Beck invention. * * * The free ends of the leaves are at the top of the pad and if the cutaway portion in the carbon sheet were at that end it is thought the same result would follow as described in claim three of the patent in suit. * * *

"The Mooney book, manufactured by the defendant in 1895, has a cover with a carbon holder which consists of a wire extending from the upper to the lower end of the cover. To this wire is attached a clamp extending across the cover but being shorter in width by half an inch. The carbon sheet which covers the leaves is firmly held over their free ends by the clamp. There is a notch or space cut out from the lower right corner of the carbonized sheet which defendants contend performs the functions of the patent in suit."

The expert for complainants testified as follows:

"Re X-Q. 75. Does the Mooney book comply in spirit, if not in terms, with the above mentioned claims so as to constitute a substantial appropriation of the features of construction there claimed?

"(A) The cutaway in the carbon by reason of the right angle notch renders it difficult to remove the leaves without grasping the carbon with the thumb in attempting to operate this book in the manner outlined in the Beck patent. I, therefore, think that in the form in which the book is presented it does not comply in spirit with the terms of the claims, and is therefore, in its present condition, not a substantial appropriation of the features of construction there claimed."

Counsel for complainants argues that this Mooney construction was accidental; that there is no satisfactory evidence that any one ever manipulated the book in the method contemplated by the patent in suit; and that:

"Defendant has not proved that the pad in the Mooney book was such and so arranged as to be capable of being used so that its leaves could be withdrawn from under the carbon sheet without handling the same, * * * the carbon sheet, with a notch cut out of it, is not combined with the pad so as to fold over and conceal the free or loose ends of the leaves, except where it is notched."

And the court, adopting the argument of complainants, held that, as the notch in the Mooney book was the result of a faulty construction, "such construction was accidental and never designed for the function of complainants' device."

There is considerable evidence tending to show that the notch in the carbon of the Mooney book was actually used for the purpose contemplated in the patent in suit, namely, manipulating the leaves of the book without soiling the fingers. But whether this is so or not, it is manifest from a mere inspection of the book and operation of the leaves and carbon that it was actually adapted for such purpose. That the sheet is held in a pad with clamps is immaterial in view of the patentee's statement, quoted above, as to the scope of the patent, and of the various other old types of books with pads known in the art, which might be substituted for the Mooney pad. The Mooney book, therefore, discloses a carbon sheet notched at the corners and covering and concealing the leaves of the pad at their free ends except where it is notched, and capable of use without soiling the fingers.

The burden of complainants' argument as to the book of the Oldfield patent is that it cannot be operated in the manner shown in the patent in suit; that the clipped corner, identical with that of the patent in suit, was not intended to be used as contemplated in the patent in suit; that it is not at or parallel to the "free ends" of the leaves; and that it was shown as used in a side carbon book. That it is capable of the same operation as that of the patent was demonstrated on the hearing in open court. And the specifications of the patent in suit state, as already shown, that the clipped corner is applicable to side carbon pad books having the sheet "fastened along the side thereof," and to any "arrangement of pad and transfer-sheet wherein the transfer-sheet * * * would conceal the free or loose ends," etc. Also complainants' expert admits that if defendants were to secure the Oldfield carbon with its notched corner at the top of defendants' prior patented Carter pad, "the parts when so assembled would produce the combination of the Beck claims."

Complainants contend, however, that this change of location of the notched corner would have involved inventive thought. But inasmuch as Oldfield states that the clipped corner "was to enable the sales clerk to extract the original and duplicate with one operation and without soiling the fingers," and the court below correctly states, as above, that by a mere change of location of "the cutaway portion in the carbon sheet * * * the same result would follow as described in claim three" of the Beck patent, we are constrained to hold that such mere change of location as would be required in order to use the Oldfield disclosure on other classes of books old in the art was manifestly within the skill of a mere mehcanic, especially in view of the Mooney books. All that he had to do was either to turn the Oldfield clipped carbon sheet upside down, or make the notch in the carbon near the free ends of the leaves, as in the Mooney books.

The further arguments of complainants in support of the invention are substantially as follows: (1) That the Beck invention could not have been obvious or Carter and Frink, prior patentees, whose

patents for constructions having the same object in view have been sustained, would have adopted it. But these patents issued in 1883, while the Oldfield patent and Mooney were in use in 1894 or thereabouts. It may well be that the so-called Beck invention was not obvious until it was disclosed by these later productions. (2) That the Beck invention has nothing to do with side carbon books, such as that of Oldfield, because in it the transfer sheet would not conceal the free ends of the leaves in the manner stated in the patent. But the specifications of the patent say that the invention does cover side carbons or transfer sheets "otherwise fastened" or "fastened along the side." And complainants assert that "the Beck invention can be embodied * * * in every form of book which the manufacturer is obliged to make in order to meet the requirements of the trade." (3) That "the Beck invention involves not merely a cut-out portion of the carbon sheet, * * * but that such carbon sheet shall be combined with the pad so as to fold over and conceal such free or loose ends, except at the portion where it is cut away to expose a portion of the leaves at or near their free ends, to enable them to be withdrawn without lifting or handling the carbon sheet. This, clearly, is not found in the Mooney book." The same argument is suggested in regard to the Oldfield patented book. But again the exhibits in evidence refute this assertion. Both in the Mooney book and the second Oldfield book the carbon sheet lies over and entirely conceals the leaves, except at the corner where it is cut away to expose a portion of said leaves, and in the Mooney book the cutaway corner is at the free ends of the leaves.

In these circumstances, we are brought to the argument that these prior constructions do not negative invention because they were not designed to be used for the purpose stated in the patent in suit. In the consideration of this question we are not unmindful of the rule, as stated by this court in Wickelman v. A. B. Dick Co., 88 Fed. 264, 266, 31 C. C. A. 530, 532:

"That novelty is not negatived by a prior accidental production of the same thing. when the operator does not recognize the means by which the accidental result is accomplished, and no knowledge of them, or of the method of its employment, is derived from it by any one. Pittsburgh Reduction Co. v. Cowles Electric Smelting & Aluminum. Co. (C. C.) 55 Fed. 307; Chase v. Fillebrown (C. C.) 58 Fed. 377; Topliff v. Topliff, 145 U. S. 161, 12 Sup. Ct. 825, 36 L. Ed. 658; Tilghman v. Proctor, 102 U. S. 707, 711, 26 L. Ed. 279."

See, also, Boyd v. Cherry (C. C.) 50 Fed. 279, 283; Clough v. Barker, 106 U. S. 166, 1 Sup. Ct. 188, 27 L. Ed. 134.

But, in order to apply this doctrine to the case at bar, we must not only treat the Mooney book as an accidental construction, but we must ignore the evidence that it was used in the manner contemplated in the patent in suit, and must, further, disregard Oldfield's testimony that the object of his notched corner was to permit the removal of both sheets without soiling the fingers, and that substantially the method described in the patent in suit was recommended to purchasers in operating such books. But even if we accept all these assumptions, as contended for by complainants, it appears from an inspection of the books themselves that they are so constructed with carbons having notched

corners as to enable any user to withdraw the leaves without soiling the fingers by taking hold of the leaf at the point exposed by the notch. And it seems too clear for argument that if users of these books did not actually "lift the [carbon] sheet in order to withdraw the leaves from beneath it in manipulating the pad," it was not because these books were not manifestly designed or intended to be used in that manner, but because for reasons of their own the users preferred another and simpler form of withdrawal. In each case there was disclosed a construction capable of operation according to the method stated in the patent in suit; the manner of use was either a matter of the individual taste of the user, or the result of the exigencies of the particular use to which the book was to be devoted. In such a case the prior construction is in itself a demonstration that it is within the principle of the patent; it is actually adapted to and capable of the use contemplated by the patent—in the Mooney book without alteration, in the Oldfield book either without alteration or by a mere change in the location of the notch in order to secure the identical operation and result accomplished by the patent in suit.

As these conclusions have been reached upon a discussion of the opinion of the court below and of the evidence of complainants' witnesses, it does not seem necessary to consider the evidence of defendants' witnesses or the arguments based thereon.

The decree is reversed, and the cause is remanded to the court below, with instructions to dismiss the bill, with costs.