GENERAL ELECTRIC CO. v. SANGAMO ELECTRIC CO.

(Circuit Court of Appeals, Seventh Circuit.   October 5, 1909.)

No. 1,532.

1. PATENTS (§ 328*)—INVENTION—ELECTRIC METERS.
   The Halsey patent, No. 626,832, for an electric meter, is void for lack of invention, in view of the prior art.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§ 328*)—INFRINGEMENT—ELECTRIC METERS.
   The Halsey patent, No. 664,265, for an electric meter of the mercury class, the improvement consisting in completely amalgamating the copper disc, discloses invention, and is valid; also held infringed.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

Suit in equity by the General Electric Company against the Sangamo Electric Company. Decree for defendant, and complainant appeals. Reversed in part.

The appeal is from a decree dismissing the bill in the Court below for want of equity. The bill was to restrain infringement of letters patent No. 626,832, issued June 13, 1899, and letters patent No. 664,265, issued December 18, 1900, to Edward S. Halsey, assignor to appellant, for electric meters.

Claim 2 of letters patent No. 626,832 (the claim relied upon) is as follows:

"2. The combination in a mercurial electric-current meter; a mercury chamber being a narrow slot in a body made of non-magnetic material in greater part; magnetic poles N and S entering to said chamber by its walls being fixed therein and defining thereby a magnetic field in said slot of small area compared with the area of the chamber of which it is a part; electrodes 22 and 22 entering said chamber through its walls by which they are held in position, being one at each end of said field centrally located thereto and of small area so as to direct the current between said poles and through the center of said field; an armature of sheet metal adapted to fit said chamber in which it rotates submerged in mercury, and is propelled by the current led to it by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

said electrodes and is retarded by the magnetic field in which it rotates. substantially as shown and specified."

The invention claimed in Letters Patent No. 664,265 consists in the amalgamation of the disk and is set forth in Claim 2 (the claim sued upon) as follows:

"2. In an integrating electric meter, a revolving armature consisting of a circular piece of sheet-copper submerged in mercury and having its two main parallel faces completely amalgamated for the purposes set forth."

Other patents cited are the following:

No. 240,678, Apr. 26, 1881, T. A. Edison.
No. 251,545, Dec. 27, 1881, T. A. Edison.
No. 281,352, July 17, 1883, T. A. Edison.
No. 381,443, Apr. 17, 1888, E. Thomson.
No. 509,095, Nov. 21, 1893, J. Perry.
No. 579,582, Mar. 30, 1897, G. Hookham.
No. 816,922, Apr. 3, 1906, R. C. Lanphier.

English Patents.

No. 1364, Mar. 14, 1883, Charles W. Siemens.
No. 7219, ........ 1890, John Perry.
No. 40, ........ 1891, Geo. Hookham.
No. 4064, ........ 1891, George Hookham.
No. 7484, ........ 1896, Evershed & Vignoles.
No. 17764, ........ 1898, Henry Reason.

The further facts are stated in the opinion.

Thomas B. Kerr and Parker W. Page, for appellant.
Charles W. Pickard, for appellee.

Before GROSSCUP and BAKER, Circuit Judges, and ANDERSON, District Judge.

GROSSCUP, Circuit Judge, after stating the facts as above, delivered the opinion.

Both of the patents relate to certain improvements in meters for measuring and recording the amount of electric current flowing in or drawn from a circuit with which they may be connected, the meters being of that special class known as mercury meters, for the reason that they have armatures of conducting material immersed in a chamber containing mercury. In meters of this kind (they existed in the prior art previous to the Halsey patents under consideration) the motive device is a disk or cylinder of copper or other good conducting material, immersed in a body of mercury, and mounted between the poles of a magnet in such a manner that when a current of electricity is passed through that portion of the disk which lies immediately under the magnetic poles, the disk will be set in rotation in accordance with a well-known law of operation resulting from the reaction between the current in the disk and the magnetic field through which its path lies. From this class of mercury meters, the Halsey invention, letters patent No. 626,832 is sought to be differentiated by the designation of the mercury chamber as a "narrow" slot, and the magnetic field as being one of "small area." But for these features, letters patent No. 626,832 would be fully anticipated in the prior art.

Though these features doubtless carry with them many practical advantages, they are, in our opinion, anticipated both in purpose and

in effect by prior patents, among them the Perry and Hookham patents; the sole difference being that when a patent in the prior art with a narrow slot is shown, it is said that the area of the magnetic field is larger, and when a prior patent with a smaller area of magnetic field is shown, it is said that the slot is not so narrow; but nowhere does patent No. 626,832 give any criterion by which it may be judged how narrow the slot must be, how large the body of the insulating material, or how large the magnetic field. Indeed, whatever changes Halsey has made over the prior art, are changes, not of new conception, but of adaptation—a change that constitutes its author in the given case, not an electrical inventor, but rather an electrical engineer. For these reasons, we believe that this patent is invalid.

Patent No. 661,265 is meant as an improvement in the same class of meters, and so far as the present suit is concerned, differs from the prior art in completely amalgamating the entire disk instead of seeking to insulate it so as to overcome the tendency to amalgamation. His thought in this respect is set forth in the following paragraph from his testimony (Rec. p. 73):

"I have found, through experiments running through one or two years, that a copper disk armature running in the narrow slot and field gap, which is essential or desirable, that unless the disk armature be thoroughly amalgamated, small air pockets are liable to exist at points which are unamalgamated or poorly amalgamated, thereby causing friction (by the accumulation in such pockets of copper oxide or mercury scum) which may vary from a small amount, affecting the meter only in small loads, to any amount up to an amount that will in some cases stop the meter at full load, or absolutely prevent it from starting. I have found repeatedly in my early experiments that a meter which at one time would run apparently all right, at another time would, with no visible cause, stop running entirely, or would indicate internal friction of some kind which I at first had difficulty in locating. I also found that some of these armatures which had been in use and constantly submerged in mercury for more than a year had not become thoroughly amalgamated, and I am of the opinion that they would never become perfectly amalgamated of themselves. The effect of non-amalgamation or imperfect amalgamation is to interfere with the perfect and complete filling of the mercury space with mercury, and after once filled, or apparently so, on account of the meter being slightly out of level or the armature running closer to one wall than another on account of being slightly out of true, the close approach to one of the walls of one of the imperfectly amalgamated spots or portions of the armature, will sometimes cause the receding of the mercury at this point, forming an air pocket and space for mercury film or scums, which very materially increases friction. This also decreases the hydrostatic pressure at this point, whereby this portion of the armature is drawn still closer to the wall, and on account of the elasticity of the shaft or play in the bearings often causes actual contact or rubbing friction, thereby preventing rotation altogether."

This, we think, is shown to have been a departure from the thought of the prior art.

True, our attention is called to the Perry British Patent No. 7219 (1890), to the Evershed & Vignoles British Patent No. 7484 (1896), and to Reason's British Patent No. 17764 (1898), the latter two of which show copper armatures completely submerged in mercury; and in the former of which it is stated that it is only "sometimes" that the copper cylinder, except where the current is received and given off, is covered with an insulating varnish—the implication argued for being that in other instances the cylinder is not insulated by varnish

and is, therefore, subjected to the amalgamating influence of the mercury—from which it is argued (copper immersed in mercury automatically amalgamating) that there is no novelty in the Halsey patent.

These exhibits from the prior art do not disclose complete amalgamation, for in order to make copper amalgamate when immersed in mercury, all traces of foreign substances must first be chemically removed (something not pointed out or hinted in the British patents); nor do they disclose initial complete amalgamation as an element of the combination—something that must be attended to, irrespective of what may occur incidentally as the result of the immersion of the armature. Indeed, though in constructing meters in accordance with the teachings of the prior art more or less amalgamation is a direct and necessary result, the amalgamation is partial only and not complete, and has been looked upon as an incident to be avoided, not an end to be purposely attained.

We think that, under the circumstances, the departure practiced by Halsey and pointed out in his patent is patentable invention. Undeniably, his initial amalgamation of the disk is the result of his experiments, not of what he read in prior inventions. Undeniably, no one in the prior art purposely set about to amalgamate; whatever amalgamation took place, was incidental only. And undeniably the disks of the appellee are subjected now to this specific process of amalgamation before they are inserted in the instrument—convincing evidence that the defendant has learned from Halsey's patent and not from the prior art.

The decree of the Circuit Court will be affirmed as to patent No. 626,832, and reversed as to patent No. 664,265 and the case remanded, with instructions to enter a decree finding Claim 2 of that patent valid, and finding it to be infringed by appellee (the infringement is not seriously denied) and entering an injunction accordingly.