BECKWITH v. MALLEABLE IRON RANGE CO.

(Circuit Court, E. D. Wisconsin. January 21, 1910.)

1. PATENTS (§ 165*)—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.
   While the courts lean toward reading into the claims of a patent such limitations as will save the real invention as disclosed by the specification and the prior art, where claims employ broad and nebulous terms for the apparent purpose of enabling the patentee to monopolize an important industry, the claims will not be narrowed beyond the boundaries clearly warranted by the specification.

   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 165.*]

2. PATENTS (§ 165*)—CONSTRUCTION OF CLAIMS—"CONVEX" SURFACE.
   The word "convex," used in the claims of a patent as applied to a surface, is to be given its generally accepted meaning, as indicating a surface of a more or less spherical form rather than cylindrical.

   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 165.*]

3. PATENTS (§ 35*)—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.
   The great commercial success of a patented device may turn the scale on the question of invention in a doubtful case.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*
   Utility, extent of use and commercial success as evidence of invention, see note to Doig v. Morgan Mach. Co., 59 C. C. A. 620.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. PATENTS (§ 62*)—SUIT FOR INFRINGEMENT—DEFENSES—BURDEN OF PROOF.

In a suit for infringement of a patent, the burden rests on a defendant to prove the defenses of anticipation or prior use beyond a reasonable doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. § 62.*]

5. PATENTS (§ 34*)—ANTICIPATION—PRIOR PATENTS.

Where it is sought to show the state of the art by prior patents, nothing can be used except what is disclosed on the face of such patents which cannot be reconstructed in the light of the invention in suit and so used as a part of the prior art.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 34.*]

6. PATENTS (§ 65*) — ANTICIPATION — ACCIDENTAL FEATURES OF PRIOR STRUCTURES.

The accidental occurrence of an element or feature of a patented combination in prior structures, where its character and function as subsequently used were not recognized, does not constitute an anticipation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 80; Dec. Dig. § 65.*]

7. PATENTS (§ 167*)—CONSTRUCTION—ANTICIPATION.

The mere casual reference in the specification of a patent to a given feature will not make it a part of the invention, unless it is relied upon in describing the same.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

8. PATENTS (§ 61*)—ANTICIPATION—EVIDENCE—ACTION OF PATENT OFFICE.

The fact that two applications for patents were pending in the Patent Office and before the same examiner at the same time, and no interference was declared, is evidence that they were not for the same invention, and that one patent does not anticipate the other.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 77; Dec. Dig. § 61.*]

9. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—RESERVOIR FOR STOVES.

The Beckwith patent, No. 787,425, for a reservoir for stoves and ranges, claim 11, is not void for indefiniteness, nor for anticipation, but discloses patentable invention; the combination shown being one of great utility and success. Also, *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Suit by Arthur K. Beckwith against the Malleable Iron Range Company. Decree for complainant.

This is a bill in equity charging infringement of letters patent of the United States numbered 787,425, issued to complainant April 18, 1905, the application for which was made on the 11th day of September, 1903. Prayer for an injunction and accounting.

The answer denies that complainant was the first inventor and discoverer of the improvements described and claimed in complainant's patent; alleges that the said alleged invention in all material points thereof had been anticipated by a large number of patents, references to which are set out. The answer also sets up prior use of the supposed invention in this country for more than two years prior to the complainant's application, and a list of such prior users is set out. For further answer the defendant alleges that said patent discloses no patentable invention; that its several claims are inexact, incomplete, illegal, and void.

The only claim of complainant's patent involved in this litigation is claim No. 11, which reads as follows:

"In a stove or range the combination of the convex and rigid back-plate; the sheet metal reservoir; and means for clamping said reservoir against the convex surface of said plate for the purpose specified."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the specification the inventor described the invention as follows:

"The objects of this invention are: First, to provide an improved reservoir by which water may be quickly heated; second, to provide an improved reservoir for stoves or ranges by which a maximum amount of waste heat may be utilized; third, to provide an improved reservoir for stoves or ranges in which the heating of the water is under control. Further objects, and objects relating to structural detail, will definitely appear from the detailed description following. I accomplish the objects of my invention by the devices and means described in the following specifications.

"The invention is clearly defined and pointed out in the claims. The structure embodying the features of my invention is clearly illustrated by the accompanying drawings forming a part of this specification. * * * I provide a back-plate, a, which is convex on its outer face, or curved outwardly. (See Fig. 1 and 2.) The back-plate, a, is cast or formed of rigid material. The reservoir, B, is formed of sheet metal, preferably copper, and its inner side, b, is clamped against the convex face of the back plate, a, by the supporting straps, B'. The clamping of the side of the reservoir against the convex plate, a, holds the side of the reservoir in close contact therewith over its entire surface, and places the same under tension, so that the tendency to buckle, or the possibility of its buckling, and thereby forming air-chambers between the side of the reservoir and the plate, is overcome. The inner end of the supporting straps, B', of the reservoir, are bent outwardly and perforated to receive the bolt, E, which are arranged through the back-plate, a. The straps are of such length that tension can be applied thereto by the bolts. The reservoir, B, is surrounded by casting, C, forming an air-chamber, C'', between it and the side walls of the reservoir. The casting, C, is embraced by the frame-like N plate, C', supported on the plate, a, outwardly projecting flanges, i, on the back-plate, a, engage the end plate, C'. The inner edges of the metal casting, C, are turned inwardly to form flanges, c'. These flanges, c', are engaged by the lug, b', on the straps, B', so that the parts are securely supported. * * * The structure is economical to produce in its parts, and the parts are readily assembled, and the reservoir can be readily attached. I illustrate and describe my invention in detail in the form preferred by me on account of the economy of production. I am aware, however, that it is capable of very great structural variation without departing from my invention. While the particular form of damper I have illustrated is of advantage in that the heat delivered is very perfectly controlled, other forms can be used and desirable results be secured, or desirable results can be had by omitting the damper entirely. Other variations will readily appear to those skilled in the art to which my invention relates."

The record in this case is very voluminous. Some 10 or 15 ranges were introduced in evidence with numerous other exhibits. Experiments of various kinds were made by the several expert witnesses to verify their theories. Experimental gas-burning ranges were constructed for the purpose of testing the heating qualities of several reservoirs. The prior art was thoroughly scoured to find anticipation and prior use. It would be impracticable to enumerate the many issues of fact and law appearing in this record.

Harry C. Howard (Fred L. Chappell, of counsel), for complainant.
A. L. Morsell, for defendant.

QUARLES, District Judge (after stating the facts as above). The defendant insists that claim 11 of the Beckwith patent is void:

"Because the claim is not complete or clear, but is functional, indefinite, and uncertain, and does not cover the construction now contended for as novel, namely, a spherically convex contact plate convex in more than one direction, either by the language, or by reference to the drawing and specifications."

In another part of the brief, counsel say the "bone of contention in this case" is whether the element of the convex rigid back-plate should be given its ordinary and usual interpretation—that is, a contact plate of a convex form in a broad sense—and, when so interpreted,

whether this element is met by the prior art, or whether the said element should be construed, as contended for by complainant, to cover a back-plate of spherically convex form, or a back-plate convex in more than one direction; and, if so construed and limited, whether it is met by the prior art.

The situation here is one which frequently occurs in patent cases. The principles of law applicable are simple and undisputed. The sole difficulty arises in applying such principles to a concrete structure.

I agree entirely with the general proposition of law laid down by the defendant that the claim is the measure of invention; that, while the specification may be referred to for the purpose of explaining any ambiguity in the claim, it cannot be employed for the purpose of expanding or changing the claim; that courts lean toward reading into the claims of a patent such limitations as will save the real invention as disclosed by the specification and the prior state of the art. But when the claims are drawn in broad, nebulous terms, for the apparent purpose of enabling the patentee to monopolize an important industry, the court should be slow in attempting to sustain their validity by narrowing them beyond the boundaries which are clearly warranted by the specification. These are the familiar precepts laid down in Cimiotti Unhairing Co. v. Am. Fur Co., 198 U. S. 410, 25 Sup. Ct. 697, 49 L. Ed. 1100; National Enameling Co. v. New England Enameling Co., 151 Fed. 19, 80 C. C. A. 485; Canda Bros. v. Mich. Malleable Iron Co., 124 Fed. 486, 61 C. C. A. 194.

The contention of the defendant is that these fundamental principles, when applied to claim 11 of the patent in suit, rendered such claim void because the inventor broadly claimed a convex rigid back-plate, without indicating whether such convexity was spherical, and that such defect was not cured by a reference to the specifications and drawings. Mr. Wilkinson, the defendant's expert, Prof. Cooley, the expert for the complainant, and Arthur Beckwith testify that the complainant's drawings show spherical convexity, and, until the argument on the final hearing, no testimony was offered or question raised as to that conclusion. It would seem to be rather late to predicate such an issue upon the statement of counsel. Undoubtedly the court might disregard the opinions of expert witnesses and reach a conclusion of its own. In such case my judgment is that the specification which describes the back-plate as "convex on its outer face or curved outwardly," together with Fig. 1 and Fig. 2, disclose convexity in more than one direction.

The vital questions raised on this branch of the case may be thus summarized:

First, is the expression "convex rigid back-plate," as it appears in each of the claims of complainant, sufficiently definite to cover and describe the structure embodied in the complainant's device?

And, second, if not sufficient, then is the defect cured by the reference to the drawings and specifications by the term "for the purpose specified"?

I am of opinion that both of these questions should be answered in the affirmative. In construing this claim we should seek to arrive at the ordinary and popular sense of the language employed.

Webster's International Dictionary defines "convex" as follows:

"Rising or swelling into a spherical or rounded form; regularly protuberant or bulging; said of a spherical surface or curved line when viewed from without in opposition to concave. Drops of water naturally form themselves into figures with a convex surface," etc.

The Century Dictionary defines the word as follows:

"Convex 1. Curved as a line or surface, in the manner of a circle or sphere when viewed from some point without it; curved away from the point of view; hence, bounded by such a line or surface; as a convex mirror. Specifically 2. In zool. and anat., elevated and regularly rounded; forming a segment of a sphere, or nearly so."

In the Standard Dictionary the term "convex" is defined as follows:

"Convex. Curving like the segment of a globe or of the surface of a circle, so as to form a rounded elevation; bulging out; rounded off."

Turning to Worcester's Unabridged Dictionary, I find the term "convex" defined as follows:

"Rising or swelling externally into a spherical form; protuberant outwards."

"Convex" as a noun is defined to be:

"A convex or spherical body."

And "convexity":

"The state of being convex; spheroidal protuberance."

These definitions from standard dictionaries clearly establish the ordinary sense and popular meaning of the term "convex" as employed by Beckwith. Certain scientific treatises are cited by defendant where technical definitions are given; but we do not resort to such authorities to arrive at the common understanding or popular meaning of words in common use.

Therefore it appears that Beckwith both accurately and adequately described in each of his claims this element of the combination.

There undoubtedly may be different degrees of convexity. There may be a protuberance which is convex in one direction only. If such peculiar form of convexity needs to be specifically described, a suitable adjective would be made use of to differentiate the structure from the popular conception of a convex surface, such as the crystal of a watch. To illustrate: It is strenuously contended that Beckwith should have claimed spherical convexity. It is obvious that such term would narrow the claim and impose a limitation thereon. It would leave him open to the technical objection that "spherical convexity," as defined in the Century Dictionary, means "bounded by or having the surface of a sphere."

As Beckwith's back-plate did not disclose the segment of a true sphere, the limitation might prove disastrous.

We are therefore of the opinion that the term "convex," as used in the Beckwith claims, was accurate and sufficient to suggest to the common mind the true shape of his back-plate.

But if we are wrong in this conclusion, the second proposition above suggested remains, whether the reference to the specifications and

drawings is legitimate by way of explanation. This is not an attempt to read something into the claim which is not there, but rather to define and exemplify something that is there. Beckwith has insisted upon the convexity of the protuberance of the back-plate in every one of these claims. If such terms were indefinite or vague as to the kind of convexity that he had in mind, it seems to me, under all the authorities, that the specification, being distinctly referred to, would in this case perform a normal function by showing convexity in more than one direction.

Defendant cites and presses upon our attention the case of Wilkin v. Covel (C. C.) 46 Fed. 925. No case could better illustrate the distinction that we are trying to draw. The invention in that case was for an improved machine for stretching saws. Judge Gresham held that all the elements were old, and that the combination evinced only mechanical skill. Complainant's counsel contended that the language of the specification, read in connection with the drawings, showed that the claim was allowed for convex or crowned rolls which were unlike anything found in the prior art. The court say:

"It will be observed that neither the specifications nor the claim describe or speak of rolls with convex or crowned surfaces. The specifications do not say that the invention consists of the use of convex rolls or rolls of any specific construction. Such rolls are not mentioned as part of the invention. The drawings do show rolls with convex surfaces, but that of itself is not sufficient to justify the court in limiting the claim in order to save the patent. In describing his invention, the complainant did not make convex rolls a distinctive feature of it, and he pointed out no advantage to be derived from the use of that particular form of rolls."

The court therefore concluded that complainant had failed to comply with section 4888, Rev. St. (U. S. Comp. St. 1901, p. 3383). Now, supposing the inventor had distinctly made the convexity of the rolls an important element in the claim and had assigned an important function thereto, but had not designated the degree of convexity that he had in mind; would not the reasoning of the court lead to the conclusion that, if it was desirable or necessary to make the claim more specific as to the degree of convexity, reference might properly be made to the specifications or drawings?

In no way, perhaps, could the doctrine which I gather from the authorities be better illustrated than by comparing the patent in suit with the second patent of Keep, 765,140. Keep has six claims, in neither of which does he claim any convex back-plate, and much less does he claim any function therefor. In his specifications, however, he says:

"A' shows a convex portion of the end of the range which forms the outer walls of one of the flues."

This is a mere incidental recital of the fact that the back-plate, following the contour of the descending flue, is convex. He makes no reference in the claims to the specification. Now if we were, under such circumstances, to read into one of these claims the element of a convex rigid back-plate, we should be reading the specification into the claim as a new element contrary to the doctrine of the authorities cited; and to assign to such convex portion of the back-plate the function and purpose of the Beckwith back-plate would be to interpolate

into the claim an element that the inventor never dreamed of. On the other hand, Beckwith consistently insists upon convexity of the plate in every claim and defines its reason and function. The rule preventing Keep from now reading convexity into his claim would not hinder Beckwith from showing by drawings more clearly the particular convexity relied upon in his claim.

In either case, therefore, the objection of defendant must be overruled.

The next proposition advanced by the defense is that claim 11 of the patent in suit discloses no invention. In support thereof counsel argues that the two elements, namely, the sheet metal reservoir and means for clamping said reservoir against the convex surface of said plate were old and well known and appear in a large number of prior patents. Therefore, if there is any novelty in the Beckwith claim, it must reside in the inclusion in the combination of the convex rigid plate. He then proceeds to show that convex back-plates have been shown in various other structures in the prior art, and therefore he reasons that the only novelty lies in the degree of the convexity of the protuberance in the back-plate. This line of reasoning is specious but unsound. It leaves out of view the basic fact that the invention is for a combination of three elements. Whether these elements were old or new is immaterial. Niles Tool Works v. Betts Co. (C. C.) 27 Fed. 301. The invention lies in the combination, and not in the elements. These several elements are brought into combination to coact in such manner as to produce a new result, or a better result, than had been before achieved. This distinction is so clearly pointed out by the Supreme Court in Elizabeth v. Pavement Co., 97 U. S. 126, 111, 21 L. Ed. 1000, that further discussion of the point becomes unnecessary.

The history of the prior art teaches that for many years there had been a growing demand for a right-hand reservoir, that is, one located away from the fire box, and so adjusted as not to interfere with the heating of the oven, and so attached to the range that the water in the reservoir would heat quickly. Naturally stovemakers were anxious to meet this demand. The old form of cast-iron reservoirs was discarded, and sheet metal substituted therefor. The main difficulty in the employment of the sheet metal was its tendency to warp or buckle under the influence of the heat, and leave an air space between the reservoir and the range which seriously interfered with the transmission of heat to the water. The early back-plates were flat. Experience showed that they warped out of shape during the process of annealing. Bumps and hollows appeared which created numerous air pockets. This necessitated the use of the bulging bar to correct these imperfections. To meet complaints that water did not heat quickly, experiments were tried by leaving out the back-plate entirely and allowing the products of combustion to come into direct contact with the sides of the reservoir. This produced rapid and intense heat, but was found destructive to the sheet metal. To remedy this difficulty a baffle-plate was attached to the reservoir. Later rigid back-plates were again introduced. In most of these ranges the weight of the water in the reservoir was relied upon to secure close contact with the range,

but after all such efforts the right-hand reservoir remained unsatisfactory for one reason or another.

Among other experimenters was the defendant company. About the time the complainant's range came on the market, defendant was engaged in conducting certain experiments on sheet-metal reservoirs at the hardware store of one Rassman at Beaver Dam, Wis. While these experiments were going on, Rassman, who was also the sales agent of the Beckwith range at Beaver Dam, had occasion to visit Dowagiac, Mich., and there saw one of the Beckwith ranges built under the patent in suit. Rassman came back and told defendant that Beckwith had solved the problem of the right-hand reservoir. Thereupon one of the new Beckwith ranges was obtained, and at the store of Rassman defendant's officers and experts made a thorough examination of the same, and extended to Beckwith the compliment of adopting and appropriating all the elements of his device. Thereupon the defendant in its catalogue gave prominence to the convex rigid back-plate as a new and prominent feature. The clamping apparatus adopted by the defendant differed in form, but was clearly a mechanical equivalent of the Beckwith clamping means. In the defendant's structure introduced in evidence convexity of the back-plate is five-eighths instead of three-eights of an inch, as shown by the Beckwith structure.

I am persuaded that the combination of the patent involves inventive thought. The device is so simple, and other experimenters had come so near reaching the same consummation, that it is perhaps natural to conclude after the fact that nothing but mechanical skill was necessary to reach the success obtained by the inventor.

In Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177, the attention of the Supreme Court was directed to a state of facts quite similar to those here present. The court say:

"This argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed; one which would occur to any mechanic skilled in the art. But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not, for years, occur in this light to even the most skillful persons. It may have been under their very eyes, they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. Who was the first to see it, to understand its value, to give it shape and form, to bring it into notice and urge its adoption, is a question to which we shall shortly give our attention. At this point we are constrained to say that we cannot yield our assent to the argument that the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention."

In this connection it is proper to consider the great commercial success of the complainant's device. The sale of the new style of range commenced in January, 1903. Prior to 1903 the complainant manufactured less than 1,500 ranges. During the year 1903 they sold 2,300 ranges. During the year 1907, they sold about 15,000 ranges.

This increase in business necessitated the construction of many new buildings and a corresponding increase in facilities all along the line. This enormous increase in the business is attributed largely to the popularity of the right-hand reservoir of the patent in suit, which practically superseded the structure theretofore built by complainant. Under the authorities this circumstance might turn the scale on the question of invention in a doubtful case. Smith v. Goodyear Co., 93 U. S. 486, 495, 23 L. Ed. 952; Magowan v. New York Belting Co., 141 U. S. 332, 344, 12 Sup. Ct. 71, 35 L. Ed. 781.

In conclusion we are reminded of the pertinent suggestion of the Supreme Court in Washburn Manfg. Co. v. Barb Wire Co., 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154:

"Under such circumstances courts have not been reluctant to sustain a patent to a man who has taken the final step which has turned failure into success. In the law of patents it is the last step that wins."

See, also, Western El. Co. v. Home Co. (C. C.) 85 Fed. 649, 654.

While we cannot extend this opinion—already too long—by considering in detail the several practical experiments made by the respective experts, it is enough to say that they tended to show that complainant's device maintains a closer contact over a larger area of the side of the reservoir, and therefore heats the water more quickly, than any of the earlier ranges. We are constrained to hold that it was Beckwith that took the last step and produced the first perfect right-hand reservoir, and that the same involved invention.

It remains to consider the question of anticipation and prior use. In this field the defendant assumes the burden of proof. Not only so, but every reasonable doubt should be resolved against it. Coffin v. Ogden, 18 Wall. 120, 124, 21 L. Ed. 821; Cantrell v. Wallick, 117 U. S. 689, 696, 6 Sup. Ct. 970, 29 L. Ed. 1017.

Numerous references are made to the prior art. It would serve no useful purpose to deal separately with these prior patents and devices, even if the legitimate scope of an opinion would warrant such an attempt. I have carefully examined each such mechanism, have read all the testimony of expert witnesses, have studied the voluminous briefs of counsel, and have reached the conclusion that there is not anywhere in the prior art disclosed the combination of all the elements of the patent in suit employed in the same way to reach the same useful result.

At the outset it may be well to recall the language of the Supreme Court in Manufacturing Company v. Adams, 151 U. S. 139, 14 Sup. Ct. 295, 38 L. Ed. 103:

"But when a class of machines so widely used as these in question it is made to appear after repeated and futile attempts that a machine has been contrived which accomplishes the result desired, and when the Patent Office has granted a patent to the successful inventor, the court should not be ready to adopt a narrow or astute construction, fatal to the grant."

It is elementary that, when it is sought to ascertain the state of the art by means of prior patents, nothing can be used except what is disclosed on the face of those patents. Such patents cannot be reconstructed in the light of the invention in suit and then used as a part

of the prior art. Naylor v. Alsop Process Co., 168 Fed. 911, 920, 94 C. C. A. 315.

It is seriously contended that a convex back-plate was made by defendant when, by use of the bulging bar applied to the flat back-plate, a protuberance resulted outwardly, and that thus this element was anticipated; but the evidence shows that the force of the bulging bar was applied to crowd the plate out to fit the upper plates of the stove which were not of uniform length, or to remove the bumps and hollows created by the heat of the annealing oven. Defendant's fore-man honestly testified that he did not know that there was any convex plate in the pattern from which the plate of the Weiser range, one of defendant's former devices, was made.

"Q. Were you obliged to pound into shape the plate you were using just prior to the present steel plate? A. No, not for the purpose of securing a convex surface, but to remove inequalities in the surface that appeared to re-sult from annealing the castings.

"Q. Did you pound any portion of such casting which came in contact with the side of the reservoir? A. Yes, sir; frequently the plate was twisted in annealing, and, in order to put it on in form for use, we were obliged to pound the plate in almost all parts."

The testimony of Edward Grant, an employé of defendant, is to the same effect.

Thus it appears that the convex protuberance on defendant's prior structures, the Weiser, Drown, and Hicks ranges, was simply acci-dental. It attracted no attention and was considered a matter of no significance until Beckwith made this feature an important element in his combination. The law is well settled that such prior accidental production, when the character and function were not recognized until the patented invention came into being, cannot be relied upon by way of anticipation. Walker on Patents (4th Ed.) 67; Wickelman v. Dick Co., 88 Fed. 264, 266, 31 C. C. A. 530; Tilghman v. Proctor, 102 U. S. 707, 711, 26 L. Ed. 279; Pittsburg Reduction Co. v. Cowles Co. (C. C.) 55 Fed. 301; Chase v. Fillebrown (C. C.) 58 Fed. 377.

Looking backward, several stovemakers now see how nearly they approached the consummation finally reached by Beckwith; but none of them hit upon the coacting law by means of which these three ele-ments were combined to produce new and practical results so long sought. Their unsuccessful efforts in the art cannot now defeat a patent founded upon a readjustment of materials by which new and useful results have been brought about. Edison El. Co. v. Novelty Co., 167 Fed. 977, 980, 93 C. C. A. 387.

I have had occasion to refer to the Keep patent, No. 765,140 in con-sidering the application of certain legal principles. It is conceded that this second patent of Keep approximates nearer to the Beckwith struc-ture than any other reference to the prior art. If claim 11 of the patent in suit cannot be read onto the Keep structure it would be idle to con-sider other references or devices. Let us therefore carefully con-sider whether No. 765,140 anticipates the patent in suit. It is insisted that Keep discloses a sheet-metal reservoir, a back-plate claimed to be convex in its construction, and a certain clamping device, which combination, it is argued, clearly anticipates claim 11 in suit. It seems

to me, however, that, although Keep assembled these several features, he never grasped the coacting principle which was the soul of the Beckwith invention, namely, to stretch the sheet metal over a convex protuberance, and thus establish such tension that the sheet metal could not spring away or warp under the influence of heat; means being furnished for increasing the tension from time to time so as to make the close contact absolute and permanent by means of this constant stretching, and not otherwise. The reservoir was kept in such close contact that the water would quickly heat by conduction. Up to this time the weight of the water was chiefly relied upon to bring about this contact. Under the Beckwith scheme the pressure of the water is a negligible quantity.

We have seen that the convex back-plate was not made an element by Keep in either of his claims; neither is there any reference to specifications. As matter of law, a mere casual reference to a given feature, such as Keep makes in his specifications, to a convex back-plate, will not support a patent if the inventor does not rely upon it in describing the substance of his invention. Waterman v. Lockwood, 125 Fed. 290, 60 C. C. A. 204; Greene v. United Shoe Co., 132 Fed. 973, 974, 66 C. C. A. 43.

Furthermore, an examination of his drawings will show that his convex surface was not so located that it could perform the function described by Beckwith as "clamping said reservoir against the convex surface of said plate, so that the clamping of the side of the reservoir against the convex plate holds the side of the reservoir in close contact therewith over the entire surface." Owing to the peculiar structure employed by Keep, the compression of clamping is against the flat surface at the bottom of the plate; and, owing to the slant of his reservoir, this would tend to spring the upper surface of the reservoir away from his convex plate.

Mr. Keep (page 176, Deft.'s Rec.), in speaking of his tank, says:

"The bottom straight edge bore against the straight bottom edge of the reservoir."

Prof. Cooley, complainant's expert, testified:

"It is clearly evident from the tank (in Keep's second patent) that it has no contact whatsoever on the horizontal convex part of the back-plate at its top. The tank being straight on its face, it would extend up by this curvature without conforming to it in any sense."

It conclusively appears from the evidence that there was no possibility of tension over the cylindrically convex surface, except such as was furnished by the weight of the water itself. Therefore the clamping device disclosed by this patent is not the equivalent of the iron straps of Beckwith. It does not do the same work by substantially the same means. Owens Co. v. Twin City Co., 168 Fed. 259, 265, 93 C. C. A. 561; Union Paper Bag Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935.

I agree with the conclusion of Prof. Cooley:

"I am myself unable to conceive any resemblance whatever between this flue strap and the convex rigid back-plate of the patent in suit. They do not act in the same way, and they do not accomplish the same result, and they are not the same thing."

It is interesting to consult the testimony given by Mr. Keep in this record, and to gather therefrom his own conception of his latest patent. We may thus see how far short he falls of the coacting principle of the Beckwith contrivance:

"I stated in my former testimony that the contact plate of my first patent, No. 715,666, was substantially of a spherical shape, and in the second patent, No. 765,140, I changed this surface, as experiments led me to do so, so as to make a more perfect contact. Therefore, as the result of this experience, I should say that making the central portion of a contact plate spherical would produce a poorer contact than even a flat plate; without water in the reservoir the contact with a flat plate would be a poor one, but with water in the contact would be reasonably good. Any bunching in the center with concave surfaces around the edges would make it unlikely that the water could press the flexible front of the reservoir into these concave surfaces. I think it would be found—in fact, I am sure of it—that the contact plate formed as under my second patent will heat water faster than a perfectly flat plate, or one with a convexity at the center."

On page 168, defendant's record, Mr. Keep, when asked as to the degree of convexity in the back-plate which he considered desirable, answered:

"I have found by experiment that just sufficient convexity to throw the flexible front of the reservoir inward produces better results than to make the convexity great enough to strain the front of the reservoir when in contact."

Thus Mr. Keep takes issue with the fundamental principle upon which Mr. Beckwith relies.

This conclusion is rendered more apparent by the repeated statements of Mr. Keep in his testimony that he relied upon the pressure of the weight of the water in the reservoir to complete the contact.

The defendant's exhibit Bryan Range, which embodies the principles of the second Keep patent which was put in evidence, corroborates the theory of Prof. Cooley, as it discloses no tension over the cylindrically convex surface. Prof. Cooley testified that he was able to pass an ordinary stove poker between the convex back-plate and the side of the reservoir. Thus it appears that the inventive conception of Mr. Keep, whether found in the patent or in the commercial structure, or in his testimony, is entirely at variance with the inventive thought of Beckwith.

I am constrained to hold that Mr. Keep's patent, No. 765,140, does not anticipate the patent in suit.

If there were doubt as to the conclusion just reached, such doubt would be resolved by the fact that Mr. Keep's application for patent No. 765,140, and the application of Beckwith, were in the Patent Office at the same time, and were under the eyes of the same principal examiner for something over eight months. No interference was declared, and both patents were issued. It is obvious that the judgment of the officials of the Patent Office was that there was no occasion for an interference, and that there were substantial features that distinguished one invention from the other. Miller v. Eagle Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121; Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973; Ransome v. Hyatt, 69 Fed. 148, 16 C. C. A. 185; Kokomo Fence Co. v.

Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689; Ney v. Manufacturing Co., 69 Fed. 405, 408, 16 C. C. A. 293.

Defendant's counsel argues that this must have been an oversight or error on the part of the officials of the Patent Office; but this is mere assumption, not supported by any evidence in the case.

As to infringement, I think there can be no serious controversy. The defendant's device responds to every feature of claim 11 of the patent in suit. The contour of the back-plate in both structures is the same, except that the convexity in the defendant's structure is five-eighths of an inch, instead of three-eighths of an inch, as in the Beckwith patent. Instead of the iron straps employed by Beckwith for clamping purposes, defendant makes use of lugs and bolts at the back and front of the jacket, which accomplish the same purpose by equivalent means. Prof. Cooley's testimony leaves no doubt in my mind that the defendant has appropriated the entire invention of Beckwith. The catalogues sent out to the trade by the defendant indicate the same thing.

For these reasons I find that the complainant is entitled to the relief demanded in his bill of complaint.

An interlocutory decree may be prepared in accordance with this opinion.