**MINTON et al. v. THOMAS.**
Patent Appeal No. 2666.

Court of Customs and Patent Appeals.
April 15, 1931.

H. G. Grover, of New York City (James G. Norton, of New York City, of counsel), for appellant.

Adolph A. Thomas, of New York City, pro se.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and GARRETT, Associate Judges.

GRAHAM, Presiding Judge.

The appellants filed an application on June 9, 1925, for a patent on improvements "in filter systems for loud speakers." On July 12, 1927, a patent was issued to the appellee upon an invention relating to loud speakers upon his application filed March 15, 1926. On October 12, 1927, the appellants filed an amendment in the Patent Office, in and by means of which they amended their specification so that the same would state one of the objects of the appellants' alleged invention to be the same as that set forth in appellee's said patent. In addition, the appellants added claims 16 to 23, inclusive, which were copied from appellee's said patent, claims 1 to 5, inclusive, and 7 to 9, inclusive. Thereupon an interference was declared by the Patent Office, the counts of the interference being the counts copied by appellants from appellee's said patent.

On February 20, 1928, the appellee made a motion to dissolve the interference, alleging as grounds thereof that the counts of the interference did not read upon the disclosure of the appellants. This matter came on to be heard before the Law Examiner, who granted the motion to dissolve as to counts 4, 5, and 8 of the interference, and denied the same as to counts 1, 2, 3, 6, and 7. No evidence was taken by the parties, and, on October 17, 1928, the Examiner of Interferences awarded priority of invention of the subject-matter in issue on renumbered counts 1 to 5, inclusive, of the interference to the appellants, holding that they could make said counts.

On appeal to the Board of Appeals, the Board held that the Examiner of Interferences was in error in his finding, and that the appellants could not make the claims in issue and awarded priority to the junior party, the appellee. The counts in issue, upon which such priority was awarded, were copied from claims 1, 2, 3, 7, and 8 of the said patent to appellee.

As the matter now comes to this court, the only question in issue is whether the said counts of the interference will read upon the disclosure of the appellants.

Counts 2 and 6 of the interference are typical, and here follow:

"2. A sound reproducer having a pair of diaphragms arranged to be operated independently of each other, an electromagnetic actuating device associated with each diaphragm, each of said devices including a coil, means for connecting said coils independently with a common circuit of electric impulses representing transmitted sound, and means for dephasing the impulses in one coil with respect to the impulses in the other coil, whereby the impulses in said circuit cause vibration of said diaphragm in dephased relation."

"6. In the art of electrically reproducing sound, the improvement which consists in operating one diaphragm to represent direct sound waves and simultaneously operating a second diaphragm in lagging phase relation to the first diaphragm to represent reflected sound waves."

The application of appellants, Minton and Ringel, had as its object the providing of a device by which different bands of frequencies resulting from a composite or complex sound might be separately amplified and thereafter blended, the idea of the alleged inventors being that this method would give a true intensified reproduction of the original sound. In order to effectuate this plan they had in mind, in a loud speaker, a plurality of elements, responsive to different bands of frequencies, with filtering means associated with the several elements to select the band of frequencies appropriate to each element. In order to do this, two electrical units were devised, each connected with a loud speaker. One of these electric circuits or units was so devised as to prevent the passage of low frequencies and to transmit the high frequencies. The high frequency unit was shunted by a choke coil and had a condenser in series with it. The low frequency unit was so constructed as to freely transmit the low frequencies and to prevent the passage of the high frequencies. This was done by means of a condenser in the circuit.

The specification filed repeatedly calls attention to the fact that the object of the device is to construct a two part loud speaker in such a way that one unit will receive the

band of high frequencies and the other the band of low frequencies, and that each will have its own band of frequencies selected by means of filters interposed in the circuits for that purpose. The manifest object of the invention is to prevent high frequencies passing over the low frequency unit and low frequencies passing through the high frequency unit. It is claimed in the specification that "the device will therefore give tones of unusual purity and increased intensity which are faithful reproductions of the original sounds." Some alternative forms of the device are shown, and the loud speakers may be in series or in parallel. It is unnecessary to detail the construction of the remainder of the device, as such construction is not claimed to be anything but what is well known to the art.

The appellee, Thomas, had obviously a different thought in mind when he filed his application which ripened into his patent. He expressed the idea in his specification that each sound when made under natural surroundings had an echo caused by reflected sound waves. He stated that in all broadcasting studios these reflected sounds were absent, and that the consequent reproduction by the reproducer was not as the sound was made in nature and did not have a pleasing effect. He, therefore, proposed a device by which two reproducing diaphragms would be provided with two separate electric circuits, and to have these two diaphragms operating out of predetermined phase with each other, by a small degree, equal to that which usually exists between the reception of the direct waves of a sound and the reception of its reflected waves.

He proposed to produce this result by having his two diaphragms connected with different circuits, in one of which circuits was located a choke coil and in the other of which was a condenser. The frequencies in one circuit were caused to lag behind the frequencies in the other circuit by means of the choke coil, which said choke coil was adjustable as to its inductance value. The inventor stated that the lagging of the frequencies in one circuit behind those in the other circuit was only a fraction of a second, and should be just sufficient to represent the phase difference between direct and reflected waves of sound.

In Thomas' invention, there was no attempt made to separate bands of frequencies. In fact his specification plainly describes a device wherein the same band of frequencies shall be received and transmitted to both diaphragms. His whole object was to dephase the current transmitted to one diaphragm as related to that received by the other. On the other hand, the idea of Minton and Ringel was to separate the low and high frequencies and to transmit them, not in a dephased relation, but in the same relation, to their respective loud speakers.

The argument made by appellants here is that there is a band of frequencies which will be received by both of their circuits and which will overlap and which cannot be filtered out of the respective circuits. It is further argued that in this band of intermediate frequencies there will be, by means of the condensers and choke coils found in their respective circuits, necessarily a dephased relation. It is, therefore, argued that, having shown a device which will produce such an effect, and being first in the field, they are entitled to the benefit of any use which may be made of the invention disclosed by them in their application.

We agree with the Board of Appeals that, if there is any such band of intermediate frequencies which will pass through the filters of both circuits in the appellants' device, it will be an effect not contemplated by them when they filed their original application herein. No one can read their specification as first filed and consider their original claims, without being led to the conclusion that such an overlapping and intermediate band of frequencies was the one thing which they were trying to prevent by their apparatus. If such overlapping occurs, and if the device which they disclose will operate in a way which they did not seek, and which they were trying to prevent, it is quite apparent that such result was accidental and does not constitute an idea which they should now be permitted to take advantage of to the detriment of the appellee, who was working with this particular thought in mind. It is a reasonable presumption that the amended specification and new claims of appellants were the results of an afterthought, suggested by appellee's patent.

It is well settled that a patent for a mechanical combination is not anticipated by a prior patent which incidentally shows a similar arrangement, which was not described or claimed to perform the function which it performs in the second invention, and in which any result obtained similar to the functions performed by the second is accidental, and was neither intended nor appreciated by the prior patentee. We had occasion to go into that matter quite fully in Re Daniel, 34

428

F.(2d) 995, 17 C. C. P. A. 605, when Garrett, J., speaking for the court, cited many authorities to the point. Other cases cited, and to the point, are Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Wickelman v. Dick (C. C. A.) 88 F. 264; Beckwith v. Malleable Iron Range Co. (C. C.) 174 F. 1001; General Electric Co. v. Sangamo Electric Co. (C. C. A.) 174 F. 141; Vacuum Cleaner Co. v. Thompson (D. C.) 258 F. 239.

The decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, Associate Judge, did not participate in this case.